# William B. Ledyard v. John W. Phillips and others.

*Foreclosure sale: Confirmation: Order opening sale: Appeals.* Where a purchaser at a chancery foreclosure sale has taken possession of the premises under a claim of title derived from the sale, paid laborers for work done thereon from the time of the sale, and made arrangements and advanced moneys to have a wheat crop sown for the following year, he thereby so far practically confirms the sale as to preclude himself from insisting that it is still inchoate and unconfirmed, and that an order subsequently granted opening the sale is therefore a discretionary one, not subject to appeal.

*Petition to open sale: Mistake: Proofs.* [1] The case sought to be made out by
the petition in this case to reopen a foreclosure sale made under the
decree, that the purchaser was mistaken and misled by his legal advisers,
and by the officer making the sale, as to his right to have the surplus of
his bid over the amount of the decree applied to the payment of prior
encumbrances held by him, is held not to be supported by the facts
proved.

*Chancery sale: Prior encumbrances: Misapprehension: Surplus moneys.* One
who during the progress of the sale announced to other bidders that the
purchaser would take subject to prior encumbrances held by him cannot
consistently ask to be relieved from his own bid, after the premises have
been struck off to him, on the assertion that he was misled and acted
under the misapprehension that he would be entitled to have any surplus
moneys there might be applied to the payment of his prior encumbrances.

*Judicial sales: Rights of bidders: Equal terms: Mistake of law: Presump-
tions.* No one who has shown himself correctly informed as to the legal
rights of his competitors at a judicial sale can reasonably claim equities
on the ground of an alleged mistake of law as to his own rights in the
premises based on any such belief as that the law would favor him above
others.     Every one will be conclusively presumed to understand that
bidders at such a sale stand on equal terms, and that what is law for the
rest is law for him likewise.

*Mistake of law.*     Whether or not it is competent to relieve against the con-
sequences of a mistake of law where the mistake is clearly made out:—
*Quære?*

*Chancery sales: Misapprehension; Opening sales: Equities: Probabilities of
loss.* The equities ought to be clear and strong to warrant setting aside
a chancery sale at the instance of the purchaser on the ground of misap-
prehension of his rights, where the premises sold were farming lands, and
the amount bid was large, and the next highest bid was within one hun-
dred dollars of that on which the premises were struck off, and was made
with full knowledge, and where, therefore, the probabilities of serious
loss are great if the sale should be opened.

*Heard April 15 and 16.     Decided April 27.*

Appeal in Chancery from Kent Circuit.

*Hughes, O'Brien & Smiley,* for complainant.

*Eggleston & Kleinhans* and *G. V. N. Lothrop,* for defend-
ants.

COOLEY, J:

This is an application by Ledyard to set aside a purchase
made by him in a foreclosure suit.

The suit was instituted for the foreclosure of a mortgage
given by Levi L. Phillips and wife to Ransom E. Wood,
and by Wood assigned to Ledyard.     The property mort-

gaged consisted of five hundred and eighty-seven acres of farming land, variously estimated by witnesses as worth from forty dollars to eighty dollars per acre. John W. Phillips and Solomon O. Kingsbury were made defendants in the suit as subsequent purchasers or encumbrancers. A decree was made October 14th, 1873, that a sale be made to satisfy the amount found due, which was about seventeen thousand dollars. Sale was made by James B. Willson, a circuit court commissioner for Kent county, August 18th, 1874, and Ledyard became purchaser of the whole as one parcel, at twenty-seven thousand one hundred dollars. Report of the sale was filed four days thereafter, and the usual order *nisi* entered, that the sale stand confirmed unless cause to the contrary be shown within eight days. No cause was shown, and on the 23d of the following month the defendant John W. Phillips filed a claim to the surplus moneys received on said sale, and the court directed a reference to commissioner Willson to inquire into the priority of the several liens thereon. On the next day the petition now under consideration was presented to the court.

In this petition Ledyard sets forth the following facts: That Hughes, O'Brien and Smiley were his solicitors in the foreclosure suit, but Mr. Smiley had exclusive charge thereof, the other partners having no knowledge of the proceedings; that at the time the sale was advertised to take place Mr. Smiley was absent from the state, and Mr. Hughes was also absent; that on the day before the sale petitioner saw Mr. O'Brien, and called his attention to the matter, informing him that petitioner proposed to bid in the premises unless some one else would bid more than the amount of his claim thereon; that being extremely busy he did not confer further with Mr. O'Brien until about the hour of ten the next morning, when the sale was advertised to take place; that Mr. O'Brien knew nothing of the state of the title, or of petitioner's claims on the land; that petitioner bid first for the premises the amount of the decree and costs, but afterwards increased the bid to twenty-seven thousand one hun-

dred dollars, at which sum the premises were struck off to him; that during the progress of the sale he stated to O'Brien that he had other mortgages and encumbrances on the premises to the extent of eight or nine thousand dollars, without stating particularly their nature; that at that time he supposed and believed it was necessary for him to bid not only the amount of said decree, but also the amount of any and all other claims and encumbrances which he held against the property, whether prior or subsequent to the mortgage which was being foreclosed, and that whatever he should bid above the amount of the decree would be repaid to him upon and for the purpose of paying off and discharging his other encumbrances; that this was so assumed by those present, and petitioner understood the commissioner who was making the sale to assent to that view; that petitioner made his bid only on that understanding, and in the expectation that the surplus moneys would be paid over to him; that he "verily believed, when he made said bid, he was buying the clear and entire title to said property, and that any surplus moneys over and above his decree would go to pay off and discharge any encumbrances against said property;" that Mr. O'Brien informed him the surplus moneys would be paid into court, and that he would be at liberty to apply therefor in satisfaction of his other mortgages; that the surplus amounted to eight thousand six hundred and thirty-two dollars and sixty-five cents, which was paid into court, and petitioner then called upon Mr. O'Brien, and for the first time stated to him the nature of his other claims. The petitioner then proceeds to set out the particulars of such claims, all of them having priority to the mortgage which he foreclosed, and amounting according to his estimate to eight thousand seven hundred dollars; and he avers that he would not have bid for said premises so much as he did by that sum if he had not supposed such prior claims would be satisfied from the surplus moneys. It is then stated that when Mr. O'Brien came to understand the nature of the encumbrances he expressed doubts of petitioner's right to the surplus moneys,

but the other members of the firm being still absent, he advised petitioner to take no steps in relation to the transaction until they should return and make an examination of the questions; that he has delayed for that reason until the date of his petition; that as he is advised and believes the order *nisi* confirming the sale was entered by the commissioner, and that neither the petitioner nor his solicitors have taken any steps to confirm the sale; that "at said sale he made inquiries of said commissioner who was conducting the sale, whether he could apply to the court to have his remaining encumbrances satisfied out of the surplus which would be paid into court, and was informed by said commissioner that he could do so," and that he relied upon the information received from said commissioner and his solicitor, and was misled thereby. And after averring that if said sale shall be confirmed said premises will cost him at least eight thousand dollars more than they are worth, he prays that it be opened, and the premises exposed for sale a second time.

This is the case made by Ledyard by his petition. Some affidavits are filed in support of it, and affidavits are put in by way of answer. Taking the petition and all the affidavits together, we regard the following facts as clearly established:

Complainant's case was in the hands of Mr. Smiley as stated in the petition. Finding him absent at the time of the sale, Ledyard called on Mr. O'Brien and had the conversations with him, the substance of which is above given. He also, on the morning of the sale, called at the office of commissioner Willson, and while waiting there for Mr. O'Brien, inquired of the commissioner what was to be done if the bids exceeded the amount of the decree. The commissioner replied that he must have the surplus to pay into court. Ledyard then remarked that he had prior encumbrances, and said, "What then?" The commissioner replied he could apply to the court, and if he showed himself entitled to the surplus by virtue of the prior encumbrances, the court would order it paid to him. The whole conversation was casual,

32 MICH.—3.

and the commissioner very properly abstained from giving any advice in the premises, and from the expression of any opinion. The commissioner and Ledyard went over to the place of sale, and the sale was opened at about the hour of ten o'clock A. M. The biddings began with a bid by Ledyard for the amount of the decree. Mr. C. P. Schermerhorn followed with a higher bid, and for an hour or so these two persons competed for the property, the last bid being one of twenty-seven thousand dollars, made by Mr. Schermerhorn. During these biddings a number of persons, estimated at fifty, were present, and Ledyard stated publicly, in a loud voice, and in the hearing of all, that he had prior encumbrances on the premises amounting to about nine thousand dollars, subject to which the sale was being made, and Schermerhorn made his bids on that distinct understanding. A number of bystanders make affidavit that the commissioner also made the same distinct announcement, and this fact is not contradicted. When Schermerhorn had made his bid of twenty-seven thousand dollars, it being then about eleven o'clock, the biddings were held open at the request of Ledyard until four P. M., and during the recess Ledyard had an interview with Schermerhorn, and among other things inquired of him whether he should increase the bid already made if Ledyard should bid higher, and Schermerhorn replied that he thought not, as he had already bid what he thought the farm worth, subject to the encumbrances. At four o'clock, therefore, Ledyard overbid Schermerhorn one hundred dollars, and the lands were struck off to him. Ledyard paid to the commissioner the surplus moneys, and the latter executed and delivered the usual deed.

There is no showing as to who entered the order *nisi* to confirm the sale, but relying upon the sworn statement contained in the petition, where Ledyard on information and belief states it to have been entered by the commissioner, and that he and his solicitors have done nothing to confirm the sale, it is insisted that the sale was still inchoate and unconfirmed when the petition was filed, and that the order of

the circuit court opening it was a discretionary order not subject to appeal. Waiving a consideration of the question whether Ledyard was not called upon to make more satisfactory showing that the entry of the order *nisi* was without his authority, we think it very distinctly appears that he disregarded Mr. O'Brien's advice to abstain from taking any steps in confirmation of the sale, and that he did take such steps in affirmance as should preclude his disputing the authority to enter the order *nisi*, by whomsoever done. These steps consisted in taking possession of the mortgaged premises under a claim of title derived from the sale. Ledyard undertakes an explanation of the facts, which are too complicated to be here set forth, but the substance of which is, that he was only taking steps to secure crops on the place on which he held chattel liens, and assisting Levi L. Phillips in continuation of an arrangement under which the latter had raised crops on the premises by means of moneys advanced by Ledyard secured by the crops raised. The evidence is, however, that he distinctly claimed the land under the sale, paid laborers for work done thereon from the time of the sale, and that he made arrangements and advanced moneys to have a wheat crop sown for the following year,—a remarkable proceeding if he then proposed to have the sale opened again to general biddings, or contemplated its being done. We are all of opinion that the sale was practically confirmed, and that the order setting it aside was appealable.

We are also of opinion that Ledyard was not misled by any thing said to him by O'Brien or Willson, or if he was, that he has precluded himself from taking advantage of it. Both these gentlemen seem to have acted with entire propriety and prudence, and nothing said by either of them should have misled any one. Mr. Willson gave Ledyard distinctly to understand that while he could apply for surplus moneys, the court must decide upon his right to them. Mr. O'Brien did not have full explanations till after the sale, and he then took the very proper course of advising that every thing be allowed to remain as it was until Messrs. Hughes and

Smiley should return,—advice that for some reason Mr. Ledyard was too impatient to follow: For whatever was done afterwards he alone was responsible.

But this is not all the responsibility that rests upon his shoulders. If we were to accept as correct his statement, that he went to the sale supposing his prior encumbrances would be paid from surplus moneys, then we should be confronted with the unpleasant fact that he took pains to impress upon Schermerhorn, the competing bidder, and the other bystanders, that the exact contrary was the fact. He was not content to leave the sale to its legal consequences, but took special pains personally and repeatedly to announce to the persons present, that the purchaser would take the premises subject to the prior encumbrances. If the fact had been otherwise, and he had succeeded in obtaining the land discharged of the prior encumbrances by means of these statements, this would have been such a fraud upon bidders and upon subsequent encumbrancers as would have required the sale to be vacated on the application of any other party concerned. To accept his statement, that he then believed the prior encumbrances were to be paid out of the surplus moneys, and that while so believing he sought to impress such other persons as might be bidders with the contrary, would be such an impeachment of his good faith as to leave his conduct open to no other explanation than that he had sought to obtain the land by deception at a sum less than others with a knowledge of all the facts would have been disposed to pay for it. Had this been the case, and had his mistake consisted in believing the facts to be the opposite of the assertions he was then making to influence the action of others, equity could give him no relief. He would be held to the truth of the statements made under such circumstances. Nor could he be heard to say he supposed the law would favor him to the extent of giving him the land with the encumbrances paid off, if he should become the purchaser, but would compel a competitor to take it subject to the encumbrances. No reasonable being is to be heard

to claim equities based upon a mistake of law of that nature. We must conclusively presume that petitioner at the time of the sale supposed Schermerhorn and himself were competing on even terms.

It is not our purpose in what we have said to intimate that Mr. Ledyard has intended any unfairness. We have stated what his position would have been had he really believed at the time of the sale that the prior encumbrances were to be paid from the surplus moneys. Having so publicly stated the contrary at that time, we must believe he is laboring under a misapprehension and forgetfulness of the facts now. And it is not to be overlooked in passing upon his petition, that to grant it would be to deprive the parties of the benefit of Schermerhorn's bid, which was made with full knowledge. It is not often a bid of that amount for farming lands can be obtained at a forced sale, and the probabilities of serious loss to defendants if the sale should be opened are very great. The equities ought to be clear and strong that would warrant it. In this case there are no such equities.

We have abstained from a discussion of the question whether one should be relieved against the consequences of a mistake of law, because we think the mistake is not made out.

The order setting aside the sale must be reversed, with costs of both courts, and the petition dismissed.

GRAVES, CH. J., and CAMPBELL, J., concurred.