JAMES RICHARDSON, Respondent, v. SAMUEL C. PALMER ET AL., ADMINISTRATORS OF L. PALMER, DECEASED, Appellants.

Kansas City Court of Appeals, February 8, 1887.

1. CIRCUIT COURT—JURISDICTION OF—CONSTRUCTION OF SECTION 34, ARTICLE 6, CONSTITUTION OF MISSOURI.—The constitution of Missouri (sect. 34, art. 6), provides that probate courts "shall have jurisdiction over all matters pertaining to probate business." But this does not preclude the concurrent jurisdiction of the circuit court, under express authority conferred by statutes, continued in every revision up to 1879, to entertain suit against administrators for the establishment, in the first instance, of demands against estates under administration.

2. ADMINISTRATION—OFFICE AND DUTIES OF ADMINISTRATOR.—The office and duties of an administrator are fixed and limited by law. He is, in no sense of the term, an agent, for there is back of him no principal. The personal property of the intestate goes to him to be administered by him as the law directs, and under the supervision of the court of probate. His office is a naked trust, pure and simple. He can make no contracts, nor perform any acts other than such as are connected with, or incident to, the execution of his trust.

3. ———— LIABILITY OF ESTATE FOR FALSE REPRESENTATIONS BY ADMINISTRATOR.—The *estate* of a deceased person cannot be held liable for the false representations of its administrator ; the *administrator* is answerable for his torts. He cannot bind the *estate* by his warranty, or render it responsible in damages for frauds or torts committed by him.

4. ———— PRINCIPAL AND AGENT—PROOF OF SCIENTER.—The knowledge possessed by the agent, to affect the principal, must have come to the agent *during his agency,* and not after or before ; or, if before, it must be so recent that it will be presumed to have been in his mind, at the time of the act done by him, which is to bind the principal.

APPEAL from Audrain Circuit Court, HON. ELIJAH ROBINSON, Judge.

*Reversed and remanded with directions.*

Statement of case by the court.

This is an action to recover from the defendants, as administrators, money, by way of damages, growing out of the alleged fraudulent misrepresentations of defendants, in the sale of a bull; sold at public auction, at an administrator's sale.

The facts are, briefly, that Launcelot Palmer died intestate, in Audrain county, in 1883, possessed of a herd of fine cattle. Among these was a bull, of thorough breeding, which had been exhibited at the various fairs over the country, and had taken a number of premiums, and stood in high repute. It was deemed advisable by the probate court that these cattle should be sold at public auction, at the city of Chicago, and the court accordingly so ordered. The sale was advertised by hand-bills to occur on the twenty-second day of April, 1884.

This hand-bill was signed, "F. C. Harris, Manager."

The plaintiff knew this bull for some time prior to the sale. On or about the day of sale he went to Chicago for the purpose of bidding on this bull, and testified that his object was to buy the bull for breeding purposes, and that he went to Harris and told him that he thought of buying, and asked him if the bull readily served cows, and if he was a sure breeder. Harris answered : "The bull is all right. He is as good as he ever was. He is very fat, and his brisket is very large, and for that reason he finds some trouble in covering a large, broad-hipped cow, but otherwise is all right." He said they usually put the large cows in a pit for the bull to serve. He testified further that he knew the bull when he purchased it; that he was at Palmer's farm before the Chicago sale, and tried to buy the bull; that he saw Harris, who priced the bull at six hundred dollars ; that he wanted to buy of the administrator, and saw him, who promised to write and price the bull, but

failed to do so; but the administrator made no representations to him about the bull; that he knew the bull was being sold by defendants as administrators, at public auction, by order of the probate court. That he told defendant at Chicago, before the sale, that as he was selling as administrator he would not be expected to warrant the cattle, but only to tell all that he knew about them; that the auctioneer announced that the pedigree and title only of the cattle were warranted. Some one bid on the bull up to eight hundred dollars, and he bid him off at eight hundred and five dollars. That he kept the bull from that time until the fall of 1884, and exhibited him at the fairs that fall. *He never offered to return the bull*, and did not write to the defendants, complaining of any defect, until November, 1884.

The evidence on the part of the plaintiff tended to show that the bull on trial failed to serve cows. He would mount, but seemed to be unable to protrude his penis more than six inches and failed to form connection. Suspecting that this failure was attributable to the over-fed condition of the bull, after exhibiting him in the fall the plaintiff reduced him in flesh, and again tried to serve him to cows, when the fact was developed, on examination, that there was an enlargement about six inches from the end of the penis as if it had been broken or otherwise injured, so as to prevent it from obtruding further from the sheath. Whereupon he made his complaint in a letter to the defendant. The hand-bills so signed by Harris, were distributed prior to the sale, and were seen by plaintiff after a portion had been distributed. The plaintiff also introduced as a witness, one Prather, who testified that in February or March, 1884, he attempted to put this bull to cow, but he could not eject his penis, and blood, etc., ran from his sheath; that in a day or two afterwards, when Harris returned, he informed him of this fact, to which Harris made no response.

One Carter, a boot-black, testified that in the spring of 1884, he was on Palmer's farm, and helped Harris put the bull to a cow; the bull seemed willing enough, but he did not get his penis out more than about six inches. He was close enough to examine his penis, but did not know it was defective. At the conclusion of this evidence the defendant offered an instruction in the nature of a demurrer to the evidence, which the court refused. The defendant's evidence tended to show that in the fall of 1883, the plaintiff was at the Palmer place, and wanted to buy the bull at private sale, and offered him six hundred dollars; that defendant told him he could not sell at private sale, that he would sell the cattle at public auction at Chicago, under order of the probate court. That on account of the weight of the bull he always pitted the cow, and that while the bull was slow he never knew him to refuse, and that he bred well. That he had no knowledge of any defect in his penis, that he never made any representations as to his breeding qualities, nor did he ever authorize Harris to act as agent in this matter, or to make any representations whatever about the bull, nor did he authorize Harris to sign the advertisement of sale, and that he did not know that Harris had so signed it until they were being distributed, when it was too late to get out new ones in time for the sale; and that he knew nothing about the statements alleged to have been made by Harris to plaintiff. That at Chicago, before the sale, the plaintiff came to defendant and told him to have the announcement made that there was no warranty or guaranty of the cattle, and for defendant to keep his mouth shut and make Harris keep his shut; and that the auctioneer made the announcement accordingly.

Harris testified that he merely went to Chicago with the cattle to help with them as an employe, that he was not in fact manager, and had nothing to do with the sale; that on the morning of the sale the plaintiff came to him and asked if the bull was a sure breeder; that he

told him the bull was seven years old, had been carried on the cars a great deal ; that he was slow, but he thought rather sure, if given time. That he did not know that plaintiff wanted to buy the bull ; and that he had no knowledge that the bull was defective in any way. He contradicted the evidence of Prather. Other evidence tended to show the bull was a good breeder.

Under the instructions given by the court the jury returned a verdict for plaintiff in the sum of $762.25. From this judgment defendant has appealed.

W. O. FORRIST and W. W. FRY, for the appellants.

I.    An estate is not liable for any promise or representation made by an administrator, which he has not the legal right to make or perform. For false and fraudulent representations and deceit, on the part of an administrator in the sale or disposition of assets of an estate, the estate cannot be held liable. In such cases the action must be brought against the administrator in his individual, not his representative character. *Brown v. Evans*, 15 Kas. 88 ; *West v. Wright*, 98 Ind. 335 ; *Sumner v. Williams et al.*, 8 Mass. 196 to 206 ; *Fritz v. Gill*, 31 Minn. 536—18 N. W. Rep. 753 ; *Cronan v. Cotting*, 99 Mass. 334 ; *Davis v. Krum*, 12 Mo. App. 288 ; *Ferris v. Myrick*, 41 N. Y. 315 ; *Able v. Chandler*, 12 Texas, 92 ; *Eustace v. Johns*, 38 Cal. 3 ; *Craton v. Wensiger*, 2 Texas, 202 ; *Ashby v. Ashby*, 7 Barn. & Cress. 444 ; 3 Williams on Executor, (6 Am. Ed.) bottom page 1776, top page 1874, and note x ; *Riley v. Kepler*, Supt. Ct. Ind., decided March, 1884, *held:* " It is no defence to an action on notes for purchase price of lands sold at administrator's sale, that the purchase was procured by false representations of administrator. He is liable individually only."

II.    This action could not be maintained against defendants as administrators for money had and received. *Cronan v. Cotting*, 99 Mass. 334 ; *Davis v. Krum*, 12 Mo. App. 288.

III.   Any action on a personal undertaking of an administrator, or for breach of personal duty, must be brought against him individually, not as administrator. *Clark v. Alexander*, 71 Ga. 500; *Eustace v. Johns*, 38 Cal. 3.   "It is a general rule of law that no action will lie against an executor or administrator to which his testator or intestate was not liable.   The estate, represented by a person upon whom the duty of keeping the premises in repair is cast, is no more liable for his neglect of that personal duty than it would be for a fine which might be imposed upon him by a criminal court for an assault and battery committed by him while in possession of said estate." 1 Estee's Pleadings, sect. 162, p. 85.   An administrator cannot create a new obligation against the estate.   If one signs a note as administrator he is personally liable for its payment.   *Rittenhouse v. Ammerman*, 64 Mo. 197; *State v. Reming*, 74 Mo. 87; *Studebaker Bros. v. Montgomery*, 74 Mo. 103.

IV.   The court erred in refusing defendants' instruction as offered; also in changing and then giving it.   It was a question of fact for the jury as to whether Harris was an employe or agent, with authority to bind defendants.   This instruction, as given with plaintiff's second and third instructions, took this question of fact from the jury and left the issue, whether Harris, as manager, made false representations, on which plaintiff relied.   These instructions did not correctly declare the law.

V.   If a purchaser holds on to the property purchased and seeks to recover damages, or the purchase money, in an action at law, on the allegation of fraud or deceit, the *scienter* then becomes the *gist* of the proceeding and must be proved.   In this case it was not claimed that defendants had any knowledge of the alleged fraud. And the court erred in refusing defendants' first and third instructions.   *Owens v. Rector*, 44 Mo. 390; *Dunn v. White*, 63 Mo. 181.

VI.   The evidence of witness Prather as to his con-

versation with Harris, was incompetent, and it was error to let it go to the jury.  Prather and Harris were strangers to the suit.  Even if Harris was an agent, this conversation could not be *res gestae*.  A jury is always quick to suspect fraud, and this evidence was admitted to the injury of defendants.  *O'Neal v. Crain,* 67 Mo. 250.  The court erred in giving plaintiff's first and refusing defendants' second instructions as to measure of damages.  In action for deceit the measure of damages is the difference between the actual and represented value at time of sale.  *Hamilton v. Mallet,* 8 Mo. App. 584.

VII.  The court below erred in holding that it had original jurisdiction of the subject matter of the suit described in the record.  The jurisdiction was *exclusive* in the probate court.

MACFARLANE & TRIMBLE, for the respondent.

I.  It was originally denied, but now universally held, that a principal is liable for the fraudulent representations of his agent, even though the principal neither profited by, authorized nor ratified the fraud. Benjamin on Sales, sects. 705, 706, 709 ; see, also, same book, p. 618, and note ; *Bennett v. Judson,* 21 N. Y. 238.

II.  An estate cannot be allowed to profit by the fraud of its representatives ; and where it has so profited it is liable to the injured party to the extent of its illgotten gain.  That was all that was sought or obtained in this case.  *Rice v. Richardson,* 3 Ala. 428 ; *Atwood v. Wright,* 29 Ala. 346 ; *Williamson v. Lawrence,* 24 Ga. 257 ; *Able v. Chandler,* 12 Texas, 92 ; *Crayton v. Munger,* 9 Texas, 292.  (*a*) An administrator has authority to bind the estate by a warranty of soundness, and consequently will bind it by false representations of soundness.  *Craddock v. Stewart,* 6 Ala. 77 ; *Eastland v. Longshorn,* 1 Nott & McCord (S. C.) 194 ; *Duncan v. Bell,* 2 Nott & McCord (S. C.) 153.  (*b*) Whilst an estate

is not liable for every promise of its administrator, yet if the estate receive the consideration of his promise it is liable to that extent. *Dunne v. Deery*, 40 Iowa, 251.

III. The court committed no error in giving the instructions for plaintiff, and that refused to defendants was properly refused; the others asked for had been given in other instructions.

IV. The evidence of witness, Prather, was admissible. Harris being the manager of the sale and mouthpiece of the defendants, it was proper to show that he knew of the bull's defects at the time he represented him sound. The same point, however, was proved by the testimony of the witness, Ed. Carter, and by other evidence in the case to which no objection was made.

V. The circuit court had jurisdiction of the subject matter of this case. Long before the adoption of our present constitution, the circuit courts had and continuously exercised jurisdiction in such cases; and if it had been the intent of the framers to oust the circuit courts of their jurisdiction, they would have said so; and would have conferred *exclusive* jurisdiction on the probate courts, in express terms. In the absence of such words of exclusion, the jurisdiction of the two courts will be held to be concurrent. See Constitution, art. 6, sects. 22, 24, 34; Rev. Stat., 1879, sects. 187, 191; *Tackett v. Vogler*, 85 Mo. 480.

PHILIPS, P. J.—I. It is objected that the circuit court had no jurisdiction of this action, as, by the constitution, section 34, article 6, exclusive jurisdiction over the subject matter is vested in the courts of probate. The language of the organic act relied on is, that: "Said court shall have jurisdiction over all matters pertaining to probate business."

It had, long prior to the adoption of this constitution, been recognized in practice and by statute, as of the customary jurisdiction of the circuit courts to enter-

tain suits against administrators for the establishment, in the first instance, of demands against estates under administration. Express authority to this end was conferred on the circuit courts by statute, at an early date, which has been continued in every revision up to 1879. See sect. 191, Rev. Stat.

Had it been the purpose of the framers of the constitution to accomplish so important and radical a change 'in practice, as contended for by appellants, it would have been done in explicit terms, and not left to mere implication. *Hume v. Railroad*, 82 Mo. 229, 234.

Where a court has possessed and exercised jurisdiction over a subject matter, even if it were conceded that such jurisdiction was conferred over it on another court by a subsequent law, such fact would not oust the jurisdiction of the first court, without the employment in the latter enactment of words of exclusion, in the absence of any repealing clause. Concurrent jurisdiction over the subject matter is not unusual in the two courts. *Tackett v. Vogler*, 85 Mo. 480; *Purdy v. Gault*, 19 Mo. App. 291; *Baptist Church v. Robberson*, 71 Mo. 326. The objection to the jurisdiction is overruled.

II. I am of opinion that the demurrer to the evidence should have been sustained. The office and duties of an administrator are fixed and limited by law. He is in no sense of the term an agent, for there is back of him no principal. The personal property of the intestate goes to the administrator to be administered by him as the law directs, and under the supervision of the court of probate. His office is a naked trust, pure and simple. He can make no contract, nor perform any acts other than such as are connected with or incident to the execution of his trust.

So Sewell, J., in *Sumner v. Williams et al.* (8 Mass. 199), said: "In exercising an authority of this description, an administrator is not the representative or agent of any other person. * * * In short the principle

undoubtedly is, I think, that an administrator has no power of charging effects in his hands to be administered, by any contract originating with himself; and it seems to be clearly understood by the decisions which have been delivered, that his contracts in the course of his administration, or for the debts of his intestate, render him liable *de bonis propriis*." So it was held in that case, that an administrator, in selling the real estate of the intestate, was performing a mere trust duty, and was not authorized to make any warranty binding on the estate, though he might, if he saw fit to so contract, make one binding himself, personally.

In *Ferrin v. Myrick* (41 N. Y. 319), it is said: "That the administrator is not the agent of the testator, or of the estate, and, therefore, allowed to contract in its behalf. We are apt to look upon an administrator as holding a like position to that held by a railroad manager, or a bank president." Further on it is said: "That in all causes of action, where the same arises upon a contract made after the death of the testator, the claim is against the executor personally, not against the estate, and the judgment must be *de bonis propriis*. * * * In all cases the law holds the transaction necessarily to be that of the executor personally, and that the averment of a promise as executor is a *nudum pactum*. No promise, as executor, can be made, except upon a transaction having an origin before the death of the testator."

Our Supreme Court has repeatedly, in recognition of this rule, held that the administrator cannot create a new obligation so as to bind the estate. *Rittenhouse v. Ammerman*, 64 Mo. 197; *State v. Reming*, 74 Mo. 87; *Studebaker v. Montgomery*, 64 Mo. 103; *Woodbridge v. Draper*, 15 Mo. 327. See, also, 1 Estee's Pleadings, sect. 162, p. 85; *Perry v. Cunningham*, 40 Ark. 185.

Indeed, the learned counsel for respondent seem to recognize this doctrine of the law, and, therefore, do not claim that this action is for a breach of warranty, but in

its essence it is an action predicated of fraud and deceit, for falsely and fraudulently representing, prior to the sale, the quality of the article sold.

In other words, it is an attempt to bind the estate for the tort of the administrator, for doing that which his office did not require, and which was not essential to, or a legal incident of, the execution of his trust. In making the sale the administrators were executing the order of the probate court, and acting under statutory regulations and limitations. They were not required to make any such representations.

The false statement was voluntary, and outside of the functions of their office. And I think, both on authority and reason, there can be no distinction, in principle, between the non-liability of the estate on an express warranty made by the administrator, and his voluntary, fraudulent representations. It would, to my mind, be a legal solecism to say that he could not bind the estate by a formal, express guaranty that the bull was a breeder, and yet the estate be liable for a false utterance to the same purport.

*West v. Wright* (98 Ind. 335), was an action for damages against the defendant for fraudulently representing certain things about the land sold under administration. The court say: "In this fraud he (the administrator) in no wise represented the estate. There was nothing in the relation which he bore to the estate which would justify such action, or make the estate liable. * * * No liability on the part of the estate was created by this fraud."

*Fritz v. McGill* (31 Minn. 536), was an action to recover damages consequent upon misrepresentations by the administrator, in the sale of lands under order of probate. The court say: "It is obvious that no cause of action exists for any representations or warranties, which the administrator may have made prior to the giving of the deed by which the title was transmitted. * * * If the administrator was guilty of fraudulent

representations or conduct, he alone is answerable, and not the estate.''

In *Brown v. Evans* (15 Kas. 91), the court say: '' We do not think that an estate of a deceased person can be held liable for the false representations of the administrator,'' citing *Dunlap v. Robinson* (12 Ohio. St. 530); *Westfall v. Dungan* (14 Ohio St. 276).

In *Eustace v. Johnson* (38 Cal. 21), the doctrine is announced that the administrator, and not the estate, is answerable for his torts ; that as a general rule of law no action will lie against the administrator, as such, '' to which his testator or intestate was not liable.''

There is no hardship in this rule, if regard be had to fundamental principles. '' No person may profess ignorance of the extent of the power of a public agent; and individuals, as well as courts, must take notice of the extent of authority conferred by law upon a person acting in an official capacity.'' *State ex rel. v. Hays*, 52 Mo. 580 ; *Commonwealth v. Fenbe*, 10 Mass. 30 ; 1 Met. 165. 

The plaintiff, in dealing with the administrator, and his imputed agent, Harris, concerning an official sale, was bound to take notice of the fact that he was executing a naked trust, and was clothed only with such powers and duties respecting the sale as the law confers upon him. So when the alleged ''manager'' made a statement respecting the quality of the bull, the plaintiff had no right to assume that it bound the estate. It was purely personal ; and the plaintiff had no right to expect that the estate would make indemnity for such mere volunteer statement.

The plaintiff's own testimony, indeed, indicates that he recognized this legal fact. For he advised the administrator to make no warranty, presumably because he knew any breach thereof would fall alone upon the administrator personally. He is now seeking to recover, in the face of his own suggestion, and after the announcement was distinctly made that no warranty was

made, except as to title and pedigree. Counsel for respondent have cited in their brief a number of cases in which it was held, that to an action on a note given to an administrator for property bought at an administrator's sale, the defendant might plead, by way of failure of consideration, that he was induced to make the purchase and execute the note by reason of the false and fraudulent representations of the administrator, at the time of the sale, touching the quality of the property. This rests on a different principle from this action. We are not called upon in this case to pass upon the validity of such a defence.

But even where this character of defence is admitted, it is conceded, as in the case of *Able v. Chandler* (12 Texas, 92), cited by plaintiff, that "the administrator of an estate cannot bind the estate by his warranty, or render it responsible in damages for frauds or torts committed by him." It is the merest technicality, without substance, to attempt to escape this rule, by claiming that the action here is for money had and received. In its essence it seeks remuneration for the fraud, and the instruction given by the court, on behalf of plaintiff, directed the jury, if they found the issues for the plaintiff, to allow him "the purchase price of the bull, less what they may believe from the evidence he was actually worth at the time of his purchase, and six per cent. interest from the time of purchase." This is precisely what the jury did. The purchase price was eight hundred and five dollars, and the jury returned a verdict for $762.25. Besides, if the action is to be treated as one for money had and received, it would fail, because plaintiff did not offer to rescind by returning the bull, but yet retains him. *Yeater v. Hines, post*, p. 619.

Nothing could better illustrate the impolicy of the rule contended for by plaintiff than the facts of this case. Without any representations made by any one, another party bid eight hundred dollars on this bull. Had he bought, and the plaintiff stood out of the way, there

could be no pretense, but the estate would have enjoyed the benefit of eight hundred dollars. But, by the plaintiff relying upon a remark made to him by an imputed "manager" of the sale, the estate would realize only $37.75.

Such a rule would practically put it in the power of administrators, by unnecessarily going outside of their official duties, to destroy the estate committed to them under the law as trustees.

I very much question, too, whether the case should have gone to the jury on another branch touching the merits. To maintain this action it devolved on the plaintiff to show the *scienter*, that the administrator had knowledge of the imputed defect in this bull. *Dunn v. White*, 63 Mo. 184. There is no evidence that the administrator had any such knowledge. But the attempt was to show that Harris knew something of it. If it were conceded that Harris could be regarded as an agent, so as to bind the administrator by his acts and declarations, the general rule is, that the knowledge possessed by the agent, to affect the principal, must have come to the agent during his agency, and not after, or before; or, if before, it must be so recent that it will be presumed to have been in his mind at the time of the act done by him, which is to bind the principal. Story on Agency, 160. The evidence to carry home to Harris that this bull was impotent, or that his penis was broken, or useless, was of a most unsatisfactory character; and the isolated instances of the bull's failure to copulate were from one to two months before the sale, and the verdict would stand on most narrow ground, based upon this proof, that Harris had knowledge of the bull's impotency. But it is not necessary, in view of the conclusion hereinbefore reached, to pass upon this question directly.

The judgment of the circuit court should be reversed, and the demand disallowed. The other judges concurring, it is so ordered, and the cause is remanded

to the circuit court, with directions to enter judgment accordingly, and so certify the same to the probate court of Audrain county.