## GAIR v. TUTTLE et al.

*(Circuit Court, W. D. Missouri, S. D. February 8, 1892.)*

1. TRUST TO SECURE DEBTS—SURPLUS—RIGHTS OF DEBTOR.
   The grantor in a deed of trust, made to secure a debt, became involved in trouble, and fled the state. The creditor secured induced the trustee to sell, and the property was purchased by defendants, bringing enough to pay the creditor and leave a surplus to the grantor. Apprehensive that they would be made to pay this surplus to grantor's other creditors, defendants, who had received a conveyance from the trustee, reconveyed the property to the trustee, procured him to resell the land, and at such sale repurchased the land for a trifle, and received a second deed from the trustee. *Held,* in an action by the grantor against defendants to recover the surplus on the first sale, that the second sale was a nullity, and that plaintiff was entitled to recover the surplus.

2. SAME—CONTEMPORANEOUS PAROL AGREEMENT.
   Defendants alleged that plaintiff had directed the trustee to apply any surplus remaining after satisfaction of the debt secured to the payment of plaintiff's other indebtedness. There was no evidence to support the contention, except an admission of plaintiff occurring in an imputed conversation three years prior to the sale. *Held,* that such alleged direction to the trustee, purporting to have been made contemporaneously with the deed of trust, and giving a different direction to the fund than that therein prescribed, was not admissible in evidence.

3. SAME—DISPOSITION OF SURPLUS—DECLARATIONS OF TRUSTEE.
   The deed itself having provided that any such surplus should go to plaintiff, defendants purchased with notice of such provision, and acted at their peril in rely-

ing on the representations of the trustee that such surplus should be applied to the satisfaction of certain debts of plaintiff in which defendants were interested, to the exclusion of other creditors of plaintiff.

4. SAME—RATIFICATION BY GRANTOR.

Though defendants may have been induced to buy the property by such representations of the trustee, the same being beyond the scope of his authority, plaintiff could not by receiving or suing for such surplus, without knowledge of the departure of the trustee, be held to thereby ratify the conduct of the trustee in the premises.

5. SAME—ACTION TO RECOVER SURPLUS—PARTIES.

The grantor, and not the trustee in a deed of trust, is the proper person to maintain an action for the recovery of a surplus due to the grantor after satisfaction of the debt secured.

At Law. Action by William Gair against Seth Tuttle and others to recover a surplus due to plaintiff as grantor in a deed of trust to secure debts, remaining after a sale of the trust subject, which was land.

### STATEMENT BY PHILIPS, DISTRICT JUDGE.

One Davis, being the owner of the land in question, mortgaged it to the Lombard Investment Company to secure a debt of, say, about $2,500. He gave two mortgages,—one for the principal sum, and one for the annually accruing interest. Afterwards he sold the land to the plaintiff Gair for over $5,000. In payment therefor, Gair executed his note to Davis for, say, $2,800, and assumed the payment of the debt of Davis to the Lombard Investment Company. To secure the payment of the note to Davis he executed to Davis a deed of trust on the land, in which trust-deed the payment of the debt to Lombard was assumed. Gair made payments to Davis until the amount remaining on his note was about $1,800. Gair got into some trouble, and left the state, going to Texas. Thereupon Davis, who had transferred his note on Gair, persuaded the trustee, Morris, to advertise the land for sale under his deed of trust. He worked up a "syndicate," composed of the defendants, to purchase the land at this sale; who were persuaded to bid it in at the sum of $4,350, sufficient to pay off the Gair note to Davis, and to meet the amounts owing to Lombard. At the conclusion of the sale Morris executed and delivered to the purchasers a deed, as trustee, conveying to them the land. This deed the purchasers accepted, and had recorded. On threats made by some of Gair's creditors and others to demand the surplus arising from this sale, after the satisfaction of Davis' debt, the purchasers became alarmed, and, on the advice of counsel, undertook to reconvey the property back to the trustee, and induced him to accept a quitclaim deed from them, and record it; and thereupon the trustee, at the instance of the purchasers and Davis, readvertised and resold the land. At this last sale the defendants again became the purchasers, at the sum of $100, and received a second deed from the trustee. Gair brings this action to recover from the purchasers the surplus money remaining after the satisfaction of the Davis debt and the costs of the first foreclosure sale. The issues and other facts sufficiently appear from the opinion.

*Ben U. Massey* and *Sebree & Tatlow*, for plaintiff.

*T. J. De Laney* and *Rathborn & Son*, for defendants.

PHILIPS, District Judge, (*after stating the facts.*) By the express provisions of the mortgage made by Gair to Morris, trustee, the proceeds arising from the foreclosure sale were to be applied—*First*, to the payment of the costs of the sale and expenses attending the execution of the trust; *second*, to the satisfaction of the debt from Gair to Davis; and, *third*, the surplus, if any, was to go to the mortgagor, Gair. This would have been so by operation of law. When the trustee executed and delivered to the purchasers the deed, and they accepted and put the same to record, their obligation at law was complete to immediately pay to the trustee the whole sum bid by them. In such case the purchasers were not responsible for the proper application of the purchase money. The title in them was complete, and the application of the fund devolved upon the trustee, who, had the money been paid to him, would alone have been answerable to the *cestui que trust* and the mortgagor for the proper distribution thereof. Rev. St. Mo. 1889, § 8691; *Barnard* v. *Duncan*, 38 Mo. 182. The sale first made by the trustee was the execution of the special power conferred upon him by the trust instrument; and, the power having been once regularly exercised and fully accomplished by the execution and delivery of the deed to the purchasers, it was exhausted. The second sale by the trustee *sua sponte* was therefore a nullity. The defendants took no title thereunder. 2 Jones, Mortg. § 1889; *Koester* v. *Burke*, 81 Ill. 436. The attempted reconveyance of the property by the purchasers back to the trustee was an unprecedented performance; and, in so far as the rights of the mortgagor in this action are concerned, may be wholly disregarded. The mortgagor was in no sense a party to this transaction.

It is important in the further discussion of the questions involved to observe what the real issues are in this case. There is no foundation for any claim of fraud and deceit. The answer tenders no such issue. On the contrary, it alleges authority in the trustee to make the assurances imputed to him. Therefore, having represented the truth, it would be utterly inconsistent and contradictory to claim fraud and deceit on the part of the trustee as ground of relief. The case must therefore be considered and determined upon the logic of the position assumed in the answer. *Harris* v. *Railroad Co.*, 37 Mo. 310; *Newham* v. *Kenton*, 79 Mo. 385; *Bank* v. *Armstrong*, 62 Mo. 65; *Wade* v. *Hardy*, 75 Mo. 399. If in fact the trustee did have authority from the mortgagor to sell and apply the surplus money to the payment of the prior mortgages, the plaintiff would be bound thereby, and the defense of the defendants at law would be complete. Let us examine this issue of fact. This claimed authorization rests entirely in parol, and is sought to be drawn from an alleged conversation had with plaintiff at the time of the execution of the deed of trust. The essence of the testimony respecting this issue is that, at the time of the drawing up of the trust instrument by Morris, the trustee, when the provision was read to Gair stating that the deed of trust was subject to the trust-deeds theretofore given by Davis to the Lombard Investment Company, Gair asked what use there was in that.

Morris said it was to make Davis safe, and that was the intention. Gair observed that was useless; that if he could not pay for the place he wanted, in case the sale went on, to pay both of them; that he did not want Davis to lose a cent by him. This imputed conversation was nearly three years prior to the foreclosure sale. Such testimony is, at least, calculated, under the circumstances of this case, to excite some suspicion. Davis, Morris, and these defendants seem to have been consulting together before the sale as to how the purchasers could get the land under the sale, and at the same time protect Davis against his debt to the Lombard Company, and secure the debt from Gair to him. Gair, it appears, had gotten into some sort of trouble and left the state, leaving the farm in possession of a tenant. From "the atmosphere" surrounding the transaction, it is difficult to escape the impression that these parties regarded Gair as civilly dead, and that they would administer his estate after the fashion of an administrator *de son tort.* The defendant Tuttle is the father-in-law of Davis. Davis was the moving spirit in bringing about the sale. It was at his instance that the trustee advertised. He worked up "the syndicate" to purchase the land, and the very inspiration of his activity was to secure a bid sufficient to pay off all the debts in which he was directly and indirectly concerned. As Gair had gone to Texas under a cloud, it was supposed, perhaps, that he would not return or appear to interrupt the programme. The trustee, seemingly forgetting that, in exercising his duties under the trust-deed, he is especially a trustee for the debtor, and should pursue such course as is most advantageous to the debtor, (*Chesley* v. *Chesley,* 49 Mo. 540–542,) evidently lent himself to the promotion of the Davis scheme, and no doubt did agree to apply the proceeds of the sale as desired by Davis. Instead of requiring the purchasers to pay over the purchase money at the time of the delivery of the deed, he permitted them to take it, and put it to record without having received all of the money. When other creditors of Gair interposed to reach the surplus fund, and recognizing the fact that, under the express terms of the trust-deed, this surplus belonged to Gair, recourse was had to the only apparent mode of escape from the dilemma by looking for authority from Gair outside of the deed itself. It was discovered, as they supposed, in the conversation resurrected after a three-years sleep. At most, the conversation relied upon was casual and incidental. It was a mere expression of what Gair expected; a mere commendation of his honest purpose to see that Davis did not lose anything by the credit given him. It was in no degree of the character of a direction to the trustee to depart from the plainly expressed provisions of the solemn power of attorney then being executed. If such was the understanding of the parties at the time of the execution of the written instrument, why was it not incorporated therein, which itself defined and qualified the powers and duties of the trustee? It is nothing more nor less than a bald attempt to ingraft by parol a clause upon the deed of trust enlarging the powers of the trustee, and giving a different direction to the fund than that prescribed by the written instrument. Such verbal statements being made contemporane-

ously with the execution of the deed appointing the trustee and defining his powers, they can neither qualify, enlarge, nor change the trustee's authority. *Walker* v. *Engler*, 30 Mo. 130; *Woodward* v. *McGaugh*, 8 Mo. 161; *Morgan* v. *Porter*, 103 Mo. 135, 15 S. W. Rep. 289; *Tracy* v. *Iron-Works Co.*, 104 Mo. 193, 16 S. W. Rep. 203. Courts cannot too rigidly adhere to the rule holding such trustees to the letter and spirit of the written power of attorney. It is certain and definite. It guards and protects the rights of the mortgagor against the treachery of human memory and the misconduct of the trustee. It is a source of reliance to the *cestui que trust*, and, above all, it is the surest protection and guaranty to the purchaser under foreclosure. They have the record before them,—the open, published, and explicit declaration, in solemn form, of the direction and consent of both debtor and creditor. For such purpose the deed is written and recorded.

The trustee, then, having neither in fact nor law authority from the mortgagor to divert the surplus fund arising from the sale to other sources than the payment thereof to the mortgagor, the final contention of defendants is that, the trustee having represented to the purchaser that he had authority to sell and apply the surplus to the payment of antecedent mortgages, and would so apply the same, and they having bid the sum they did on that theory, the mortgagor is bound thereby in this action. The legal postulate for this proposition is the recognized rule of law applicable to principal and agent, that where a person represents himself to be the agent of another, clothed with authority to act in a given matter and in a particular way, although he may have no such agency and authority, yet if the misrepresented principal take the fruit of the assumed agent's act, or seek to avail himself of the benefits arising from the misrepresentation, he thereby ratifies the act of the imputed agent, and will be estopped from asserting the contrary; as "he who would avail himself of the advantages arising from the act of another in his behalf must also assume the responsibilities." As this raises the question of ratification, it might be a sufficient answer to say that no such issue is tendered by the answer; as, under the code of pleading in this state, a ratification must be pleaded to avail the party. *Bank* v. *Armstrong*, 62 Mo. 59; *Wade* v. *Hardy*, 75 Mo. 399. But if it be conceded that defendants are in an attitude to avail themselves of this defense, it is an interesting question as to whether the foregoing rule has any proper application to this case. It is a misconception to regard Morris in the light of one acting merely under color of an agency. In no sense did he occupy the position of a person in possession of another's property, offering it for sale on false assurances of ownership or authority to sell. Nor was his attitude that of one falsely assuming to have authority to dispose of another's property, and making false assurances respecting the same. In such case, the true owner or principal could only claim the benefit of the act on the assumption that the agent's act was his.

But the case at bar is where Morris was the express trustee appointed by deed, duly recorded, known to those dealing with him, wherein his

powers and duties were clearly defined. All those who dealt with him had, as a matter of law, notice of the nature and extent of this trusteeship. "Every such instrument in writing, certified and recorded in the manner heretofore prescribed, shall, from the time of filing the same with the recorder for record, impart notice to all persons of the contents thereof; and all subsequent purchasers and mortgagees shall be deemed, in law and equity, to purchase with notice." Section 2419, Rev. St. Mo. 1889. As said by the court in *Barnard* v. *Duncan*, 38 Mo. 181–183:

"The sale is not made by the original owners. It was a sale by the trustee in his fiduciary capacity only. The trustee undertakes only for the execution of the power that is given him, and he is only authorized to sell and convey the title which is vested in him by the deed. * * * The case belongs to the class of fiduciary vendors, as executors, administrators, guardians, mortgagees, assignees for the benefit of creditors, and other like trustees, who have no other interest in the property than a legal title with power to sell and convey. * * * They are mere agents to sell and convey, and trustees to execute the trusts declared. * * * The title is on record, the records are open to all, and the purchasers can examine the title for themselves. There being no warranty, the rule of *caveat emptor* must necessarily be implied in reference to the conveyance."

It is in consonance with this that the rule obtains that a purchaser under a foreclosure mortgage sale cannot be relieved from the payment of the surplus bid by him on the ground that he was of opinion, and was so advised by counsel, that the surplus fund would go to the liquidation of the prior mortgage debt. The purchaser buys only the equity of redemption, which is converted into money, and he takes the property *cum onere*. "A trustee holding the naked legal title cannot, on the sale of the property, use part of the purchase money to satisfy taxes or prior incumbrances, unless he is empowered thereto in the instrument creating the trust. In all such cases the purchaser takes the land subject to the incumbrances." *Schmidt* v. *Smith*, 57 Mo. 135. See, also, *Shear* v. *Robinson*, 18 Fla. 379; *Ledyard* v. *Phillips*, 32 Mich. 13.

As said by Lord HARDEWICKE in *Pullen* v. *Ready*, 2 Atk. 591:

"If parties are entering into an agreement, and the very will out of which the forfeiture arose is lying before them and their counsel while the drafts are preparing, the parties shall be supposed to be acquainted with the consequences of law on this point, and shall not be relieved under a pretense of being surprised with such strong circumstances attending it."

Administrators cannot bind the estate by any representation made by them while conducting a sale. *Richardson* v. *Palmer*, 24 Mo. App. 480. This, *inter alia*, for the reason that their duties are defined and limited by law, and "no person may profess ignorance of the extent of the power of a public agent, and individuals must take notice of the extent and authority conferred by law upon the person acting in a fiduciary capacity." *State* v. *Hays*, 52 Mo. 580, and citations.

As applied to the facts of this case, we hold that where the purchaser is advised, by the deed of trust itself under which the trustee is proceeding, that any surplus arising therefrom shall go to the mortgagor,

he has notice of the trustee's express authority, and the doctrine of *caveat emptor* applies. The purchaser acts at his peril in relying upon the representations of the trustee as to any modification or change in his powers, existing *in pais*. What safety has the mortgagor under any other rule? What claim of relief can any sane man have to the interposition of the court to relieve him against his own reckless negligence in blindly accepting the statement of the trustee, in direct conflict with the express direction in the very deed under which the trustee sells and the purchaser buys? The deed of trust advising the purchaser of the fact that any surplus bid by him was to go to the mortgagor, he was at once put upon inquiry as to the existence of the outside authority claimed by the trustee. I understand the rule of law to be that, when a party is thus put upon inquiry, he is affected with notice of every fact to which a reasonable prosecution of the inquiry would lead. One conscious of the means of knowledge cannot shut his eyes to "the means in his possession for the purpose of gaining further information." *Rhodes* v. *Outcalt*, 48 Mo. 370. As pertinently said by BAKEWELL, J., in *Lee* v. *Turner*, 15 Mo. App. 213:

"It is well settled that every one is conclusively presumed to know those things which he might have known if he chose to ask a question that it was his duty in ordinary prudence to ask. 'Notice' means the means of knowledge of which a person willfully neglects or refuses to take advantage. * * * The purchaser who assumes the risk of bargaining without inquiry cannot transfer to the defendant [plaintiff] a loss resulting from his own neglect and inaction. *Smith* v. *Tracy*, 36 N. Y. 79–87."

When these defendants knew that the trustee was asserting an authority in contradiction of the express conditions of the trust-deed, the most ordinary prudence would have prompted the inquiry, "How and when did you get such authority from Gair?" The presumption is that the trustee would have informed them, just as he testified on the trial when questioned thereof, that his claim of authority was predicated of the conversation had with Gair at the time of the execution of the deed of trust; which conversation, as we have already shown, amounted to no authority at all.

Where, then, is the foundation for the *dernier ressort* of counsel for a ratification? The rule of ratification applies "when an authorized agent, acting within the scope of his authority, perpetrates a fraud for the benefit of his principal, and the latter receive the fruits of it; he is liable as for his own wrong." *Smith* v. *Tracy*, *supra*, page 83. It has no application where the trustee is clothed with a special limited authority, and in making sale departs from or makes assurances outside of his apparent authority. By receiving the proceeds of the sale, or suing therefor, without knowledge of the departure of the trustee, the principal is not affirming the wrong of the trustee, but is only claiming that which, by the express terms of the power of attorney, he is entitled to. This important distinction is sharply drawn in the case last cited, where the court cites the case of *Wilson* v. *Tumman*, 6 Man. & G. 236, in which it was held "that, by adopting and ratifying what he had authorized,

he did not adopt and ratify the unauthorized acts of his agent." Predicable of this distinction, the principle is announced in *White* v. *Sanders*, 32 Me. 188:

"If one wrongfully sells the plaintiff's goods, the receipt of money from him by the plaintiff, on account of such goods, would not be a ratification of the sale, provided the plaintiff would have had a right, without notifying the sale, to receive the money."

So it is held that the receipt of a portion of money realized from property improperly sold by a sheriff will not amount to a ratification of the sale. *Harris* v. *Miner*, 28 Ill. 135, 136. "Without notifying the sale," the plaintiff here, had the surplus money been paid over to him, would have been entitled to it, under the express provisions of his deed authorizing the sale. There is not one word of evidence to show that when he brought this action he had knowledge of any representations the trustee is now claimed to have made. By bringing this action he ratifies nothing; he only lays claim to that which, by the plain letter of the trust-deed, he is entitled to. It is not deemed necessary to go further, and comment on the effect of defendants' accepting deed from the trustee, and afterwards ousting the plaintiff's tenant from the land, and withholding the premises to the date of this trial. It would present the question of estoppel as against the defendants. *Ledyard* v. *Phillips*, 32 Mich. 13. Nothing could better illustrate the improvidence and irregularity of the course pursued in this transaction than what followed the effort of the purchasers at the first foreclosure sale to escape their responsibility to Gair. The answer discloses the fact that, at the instance of Davis, who was not the holder of the note, the trustee, Morris, sold a second time. At this sale these same defendants bought in the property at $100, which is admittedly worth $4,300, which after they shall have paid off the Lombard debt, if they ever do, would cost them only about $2,600, while the evidence at this trial shows that at the first sale there were bidders who were ready and willing to bid at least the amount of the Davis debt, $1,800. So by this second maneuver of defendants they seek to obtain Gair's entire equity for $100, and leave him indebted to the holder of the Davis note for $1,700 and interest.

The objection that this action, if maintainable at all, can only be in the name of the trustee, is not tenable. The debt of Gair to Davis having been satisfied by the sale, the surplus money belonged to the mortgagor. He then became the real and only party in interest, and either he or the trustee might bring action for money had and received. *Reynolds* v. *Hennessey*, 2 Atl. Rep. 701, 15 R. I. 215; *Flanders* v. *Thomas*, 12 Wis. 410; *Ballinger* v. *Bourland*, 87 Ill. 513; *Rogers* v. *Gosnell*, 51 Mo. 466; *McComas* v. *Insurance Co.*, 56 Mo. 575; *Fitzgerald* v. *Barker*, 70 Mo. 687.

Again, the defect of party plaintiff, if such defect were conceded, being apparent on the face of the petition, should be raised by demurrer. If not so raised, the objection is deemed in law as waived. *State* v. *Sappington*, 68 Mo. 454; *Walker* v. *Deaver*, 79 Mo. 672; *Rogers* v. *Tucker*, 94 Mo. 352, 7 S. W. Rep. 414. Embarrassing, indeed, would be the situa-

tion of this plaintiff if his relief depended on the trustee, Morris, taking the initiative in this matter, when it appears that he is making common cause with the defendants to defeat the plaintiff's action. The issues are found for the plaintiff. Judgment accordingly.