THE STATE ex rel. ELIZABETH C. KNISELY, Administratrix of Estate of CHARLES H. KNISELY, v. CHARLES W. HOLTCAMP, Judge of Probate Court.

In Banc, December 22, 1915.

1. ADMINISTRATION: Probate Courts: Concurrent Jurisdiction: To Establish Demands. Section 34 of article 6 of the Constitution, providing for the establishment of probate courts and defining the bounds of their jurisdiction, did not vest in such courts exclusive jurisdiction, but only concurrent jurisdiction with other courts of record, to entertain suits against administrators for the establishment of demands against estates. And section 197, Revised Statutes 1909, in terms certain, authorizes the establishment of such demands in the circuit court.

2. ————: Purpose: Dissolution. The estate of a deceased person is a distinct legal entity, and is held in trust and reserved by law primarily for the payment of decedent's debts, and its existence is not dissolved until its demise comes in the orderly and peaceable way ordained by statute. And it is not dissolved, nor does jurisdiction over it cease, so long as a demand, timely begun, is pending in the circuit court undetermined, or if determined, is unpaid out of existing assets.

3. ————: Establishing Demands in Circuit Court: Exhibition. The due service of the summons upon the administrator, in an action begun in the circuit court within the time specified by statute after the issuance of letters of administration, is an exhibition of the demand sued on against the estate; and by the filing of the action and service of summons within such statutory period, the circuit court acquires jurisdiction (1) of

the subject-matter, or demand, (2) of the person of the legal representative of the estate, and (3) of the estate, in so far as the demand and the right to have it determined are concerned.

4. ——: ——: ——: **Ousting Jurisdiction.** And jurisdiction of the circuit court having lawfully attached can be ousted or divested only by statutes clearly so providing.

5. ——: ——: **Final Settlement in Probate Court: Action Still Pending in Circuit Court.** The probate court is without jurisdiction to order the administrator to make final settlement of the estate so long as an action on a demand, timely brought, in which service of summons was timely obtained, is pending undecided in the circuit court, or on appeal to an appellate court; and a final settlement, made two years after notice of administration given, and approved by the probate court, and an order directing distribution and discharging the administrator, made while such suit is still pending in either the circuit or appellate court, are likewise void, nor can the payment of a claim established by the action in the circuit court be defeated by the prior approved final settlement and discharge.

6. ——: ——: ——: ——: **Estate Not Fully Administered: Jurisdiction.** The probate court has no jurisdiction to determine the liability of the estate upon a demand made the basis of an action timely and properly brought in the circuit court against the administrator, and until the estate's liability thereon is determined the estate is not fully administered, and the probate court has no jurisdiction to determine the estate is fully administered until its liability upon that demand is determined.

7. ——: **Final Settlement: When to be Made: When an Annual Settlement.** A final settlement, when lawfully made, destroys the estate as an entirety and ends all powers as such of its legal representative; its substance is distributed and its demise is complete. But the statute fixes no definite time when the estate shall be finally settled, but names a condition by which the time may be determined, and that condition is that the estate has been fully administered. A purported final settlement, made before the estate has been fully administered (for instance, while a suit against the administrator to establish a demand against the estate is still pending in the circuit or appellate court), has only the effect of an annual settlement, and beyond that is absolutely void.

8. ——: ——: **Administrator De Bonis Non.** After final settlement an administrator *de bonis non* can be appointed only upon the discovery of unadministered assets, and then only when there are unpaid allowed demands against the estate. But there is no need of an administrator *de bonis non* where

the purported final settlement was unlawful, for that it was made before the estate was finally administered. In such case the purported final settlement, though approved by the probate court, is in legal effect an annual settlement, and the administrator continues to be its legal representative, unless removed upon some other statutory ground.

9. ———: ———: **Collateral Attack.** Full administration of the estate must really exist, regardless of the probate court's decision thereon, else a settlement, as a final one, is void, and subject to collateral attack.

10. ———: ———: ———: **Demands Pending in Any Court.** The probate court is without jurisdictional power to approve a final settlement as long as in fact demands are legally pending and undisposed of, either in the probate court or other courts of record, and there are available assets for their satisfaction.

11. ———: ———: **Unlawful: Discharge of Administrator.** If the purported final settlement, approved by the probate court, was unlawful, for that the estate had not been fully administered, there being demands legally pending and assets out of which they may be satisfied, and is for that reason to be considered in legal effect an annual settlement, the administrator is at all times after such purported final settlement the legal representative of the estate, unless previously lawfully and finally discharged on other grounds, and the estate is bound by all valid judgments in cases timely brought against him in any court of record in which he was duly served.

12. ———: **Judgment: Refused Classification: Mandamus: Proper Remedy.** Where a probate court has refused to hear a matter over which it has jurisdiction, on the ground that it had no such jurisdiction, this court will issue its writ of mandamus to compel it to proceed. So that where the Supreme Court reversed a judgment of the circuit court in a suit brought against the administrator of an estate, and directed judgment against him in a definite amount, and the circuit court in compliance with that direction entered judgment and directed certification thereof be made to the probate court, and that court refused to act in the matter on the ground that the administrator had long previously made final settlement, which had been approved, and had been discharged, mandamus is the proper remedy to compel the probate court to classify the demand and proceed in the matter, because, if for no other reason, it is a proper method to compel the carrying out and giving effect to the judgment which the Supreme Court directed and commanded; and because (BOND, J., concurring) there was no necessity for plaintiff to resort to other modes of redress, which might be applicable except for the conclusiveness of that judgment.

Mandamus.

WRIT GRANTED.

*E. P. Johnson, Edward C. Crow* and *Morton Jourdan* for relator.

(1)   The decision of the Supreme Court and the judgment of the circuit court entered in pursuance of the mandate of the Supreme Court legally established petitioner's demand against the Leathe estate, and also declared the right of petitioner to the classification of her judgment in the fifth class.    Knisely v. Leathe, 178 S. W. 453; Knisely v. Leathe, 256 Mo. 363; R. S. 1899, secs. 190, 208.    The statutory duty of the respondent to entertain the application of petitioner and to classify her judgment was imperative and clear and the refusal of respondent denied to the petitioner a clear statutory right.    Wense v. McPike, 100 Mo. 534.    Where, upon an application to a court the facts are undisputed, and the principles of law relating thereto are clearly settled and well defined either by statute or common law the granting of the application is not a matter of discretion with the court, but a duty, and the applicant has a legal right to a decision conforming to the said principles of law.    State ex rel. v. Albin, 44 Mo. 347; State ex rel. Bayha v. Philips, 97 Mo. 331; State ex rel. v. Johnson, 51 L. R. A. 66; People ex rel. v. Superior Court, 5 Wend. 114.    The duty devolving upon respondent upon the presentation of petitioner's judgment in this case was not discretionary in character, but it was imperative, specific and defined by Sec. 208, R. S. 1899, requiring the probate courts to determine the class of such judgments when filed, and petitioner is entitled to a peremptory mandamus in this cause commanding the classification of said judgment in the fifth class.    State v. Albin, 44 Mo. 347; State v. Meier, 143 Mo. 447; State v. Berg, 76

Mo. 142; State v. Hudson, 226 Mo. 265; State v. County Court, 41 Mo. 221; State v. Bourne, 151 Mo. App. 104; 19 Am. & Eng. Ency. of Law (2 Ed.), 740f; High on Extraordinary Legal Remedies, sec. 534; Wense v. Mc-Pike, 100 Mo. 487. (2) The probate court did not have jurisdiction to make a final settlement of the Leathe estate while the relator's suit to establish a claim against said estate was pending and being litigated in the circuit and Supreme Courts, because the statute provides as a condition precedent that before jurisdiction of probate court to make a final settlement can attach the estate must be fully administered, and it could not be fully administered while the claim of petitioner against said estate remained in litigation unadjusted and unsatisfied. R. S. 1899, sec. 233; Ryans v. Boogher, 169 Mo. 685; Smiley v. Cockrell, 92 Mo. 111. It has been expressly decided in this State that section 34 of article 6 of the Constitution does not give the probate courts exclusive jurisdiction in the first instance of demands against estates under administration. Richardson v. Palmer, 24 Mo. App. 480; State ex rel. v. Tittman, 103 Mo. 566; Matson & May v. Pearson, 121 Mo. App. 134. The circuit court has concurrent jurisdiction with the probate court for the adjudication of demands against an estate. State ex rel. v. Tittman, 103 Mo. 553; Richardson v. Palmer, 24 Mo. App. 480. The rule of law is that where two courts have jurisdiction, the court that first acquires jurisdiction, its power being adequate, retains it, and may dispose of the whole controversy. 11 Cyc. 987; State ex rel. v. Reynolds, 209 Mo. 163. (3) Under the foregoing authorities and Sec. 233, R. S. 1899, the estate not having been fully administered, a final settlement of it could not be made and the executrix discharged, as proceedings by a court without authority of law are null and void. State v. Clark County, 44 Mo. 51; State v. Lafayette County, 41 Mo. 545; State

v. Churchill, 41 Mo. 41. (4) A probate court cannot divest itself of jurisdiction over an estate or an executor or administrator by deciding a settlement is final as to a matter not included in the settlement. 2 Woerner's Law of Administration, p. 1128, sec. 506. (5) The making of the pretended final settlement while relator's suit against the Leathe estate was pending was a fraud upon the probate court that renders it void as a final settlement. Smiley v. Cockrell, 92 Mo. 109; Lenox v. Harrison, 88 Mo. 491. (6) Final settlements of estates made in violation of or not in conformity to law are invalid and have the effect only of annual settlements. Lenox v. Harrison, 88 Mo. 491; Mead v. Bakewell, 8 Mo. App. 553; Van Liew v. Barrett & Co., 144 Mo. 515; Brashears v. Hicklin, 54 Mo. 102; May v. May, 189 Mo. 502. No notice to the executrix of the Leathe estate was required to be given before presenting relator's judgment to the probate court. Wernse v. McPike, 100 Mo. 487; Stephens v. Bernays, 119 Mo. 146. (7) Sales made by Grace A. Leathe as devisee of Samuel H. Leathe of valuable real estate after the pretended final settlement does not deprive relator of her right to enforce her judgment against said real estate. Rogers v. Johnson, 125 Mo. 216; Aubuchon v. Aubuchon, 133 Mo. 265; Moody v. Peyton, 135 Mo. 490; Higbee v. Bank, 244 Mo. 424; Brown v. Marshall, 241 Mo. 750; Shaw v. Nicholay, 30 Mo. 107; Metcalf v. Smith, 40 Mo. 576; Wright v. Green, 239 Mo. 454; Armor v. Lewis, 252 Mo. 576; Lewis v. Carson, 93 Mo. 591; Carson v. Walker, 16 Mo. 87; Ferguson v. Carson, 9 Mo. App. 497; Lemon v. Lincoln, 68 Mo. App. 80.

*Frank H. Sullivan, Manton Davis, George W. Lubke* and *George W. Lubke, Jr.,* for respondent.

(1) The judgment of the probate court approving the final settlement, discharging the executrix and clos-

ing the estate is a final judgment of a court of competent jurisdiction, not subject to collateral attack. Clyce v. Anderson, 49 Mo. 40; McLean v. Bergner, 80 Mo. 418; Robards v. Lamb, 89 Mo. 310; Smith v. Hauger, 150 Mo. 444; Ratliff·v. Magee, 165 Mo. 469; Woodworth v. Woodworth, 70 Mo. 601; State to use v. Roland, 23 Mo. 95; State ex rel. v. Gray, 106 Mo. 526; Pearson v. Murray, 230 Mo. 162; State ex rel. v. Carroll, 101 Mo. App. 110; Michie v. Grainger, 149 Mo. App. 301; Goodman v. Griffith, 155 Mo. App. 574; Mueller v. Grunker, 145 Mo. App. 611. (2) A probate court may remove a personal representative and appoint a successor, or make final settlement "if it appear to the court that the estate has been fully administered." R. S. 1909, secs. 10, 38, 47, 48, 49, 50, 54 and 239. (3) The powers of a personal representative are drawn exclusively from the appointment of the probate court. Stagg v. Green, 47 Mo. 501. (4) The judgment of the probate court discharging the executrix, and closing the estate, put an end to her powers longer to appear for the estate in the case of Knisely v. Leathe, and the judgment in that case having been rendered without a revivor against a successor is voidable. Taylor v. Savage, 1 How. (U. S.) 286; Buckingham v. Owen, 6 Smedes & M. (Miss.) 505; Wiggin v. Plumer, 31 N. H. 366; Groce v. Field, 13 Ga. 24; Weddington v. Huey, 80 Ga. 651; Bank v. Stanton, 116 Mass. 436; More v. Miller, 53 Pac. (Cal.) 1078, 59 Pac. (Cal.) 823; Childs v. De la Veago, 89 Pac. 83; Bank v. De la Veago, 89 Pac. 84; Hayes v. McClear's Admx., 2 Harrington (Del.), 65; Edney v. Bann, 53 Neb. 116; State ex rel. v. Riley, 219 Mo. 681; Ratliff v. Magee, 165 Mo. 469. (5) On writ of error *coram nobis,* brought by some one properly representing the estate or in privity therewith, the judgment should be vacated. Latshaw v. McKees, 50 Mo. 384; Dugan v. Scott, 37 Mo. App. 669. (6) The jurisdiction of this court over Knisely

v. Leathe ended when the mandate went down, except for the single matter of seeing that the directed judgment was entered. State ex rel. v. Broaddus, 234 Mo. 367. (7) Proceedings to review the judgment in Knisely v. Leathe are to be brought before the circuit court and not here. Laffoon v. Fretwell, 24 Mo. App. 258; Ewing v. Winters, 39 W. Va. 490; James v. Railroad, 123 N. C. 302; Putnam v. Clark, 35 N. J. Eq. 149; Galbreath v. Wallrich, 109 Pac. 417. (8) The proceeding in the probate court was a suit on the judgment. McFaul v. Haley, 166 Mo. 68. (9) Mandamus will not lie to direct a judicial officer how he shall act, but only that he do act. State ex rel. v. County Court, 41 Mo. 225; Tranir v. Porter, 45 Mo. 339; State ex rel. v. Court of Appeals, 87 Mo. 376; State ex rel. v. McGown, 89 Mo. 150; State ex rel. v. Smith, 105 Mo. 9; State ex rel. v. McElhinney, 246 Mo. 56; State ex rel. v. Shackleford, 263 Mo. 64. (10) Relator might have appealed to the circuit court and had a full hearing *de novo.* R. S. 1909, sec. 3956, sub. 4; R. S. 1909, sec. 289, sub. 5; R. S. 1909, sec. 296; Scott County v. Leftwich, 145 Mo. 31. (11) Where there is such a remedy by appeal, mandamus will not lie. Dunklin County v. County Court, 23 Mo. 454; Williams v. Court of Common Pleas, 27 Mo. 225; State ex rel. v. County Court, 48 Mo. 478; State ex rel. v. McAuliffe, 48 Mo. 114; State ex rel. v. Lubke, 85 Mo. 339; State ex rel. v. Marshall, 82 Mo. 486; State ex rel. v. McGown, 89 Mo. 158; State ex rel. v. Fort, 180 Mo. 109; State ex rel. v. Thurman, 232 Mo. 163; State ex rel. v. Grimm, 178 S. W. 121. (12) Even an error of an inferior court as to its jurisdiction is reviewable by appeal and hence mandamus will not lie. State ex rel. v. Mosman, 112 Mo. App. 549; State ex rel. v. Thurman, 232 Mo. 163. (13) And the usual delays incident to an appeal do not make that procedure an inadequate remedy. State ex rel. v. Neville, 110 Mo. 349; State ex rel. v. Robinson, 257 Mo.

593. (14) The loss of the right of appeal by failure to exercise it within the time allowed will not justify a writ of mandamus. State ex rel. v. McKee, 150 Mo. 244; State ex rel. v. Thurman, 232 Mo. 164; State ex rel. v. Grimm, 178 S. W. 121.

REVELLE, J.—This cause enters our portals as no stranger. Our acquaintance covers a period of years and extends to all of its ramifications. It has been here twice on appeal and several times on applications for original writs. It seems to possess one quality of Banquo's ghost. It came here first upon a demurrer to the petition, involving principally a question of limitation and the character of the instrument sued upon. [Knisely v. Leathe, 256 Mo. 341.] The cause was reversed and remanded to be retried in accordance with the views there expressed. Upon retrial a verdict for the defendant was returned and plaintiff again appealed. On that appeal (Knisely v. Leathe, 178 S. W. 453) this court reversed the judgment *nisi* and directed a judgment for plaintiff in the sum of $107,500, with interest thereon at the rate of six per cent per annum from May 17, 1902, said interest being required to be calculated upon the day the circuit court entered the judgment, and be then added to the principal and made a part and parcel of such judgment. In compliance with this order, and on July 2, 1915, the circuit court entered judgment in favor of relator for the aggregate amount of $192,263.75, and this, in compliance with this court's direction, was certified to the probate court for classification, same being filed and presented in open court on the 14th day of July, 1915. There was also attached to the certified copy of judgment and filed an affidavit of relator stating that she had given credit to the estate involved for all payments and off-sets to which it was entitled, and that the balance claimed on the annexed judgment

was justly due and remained unpaid.    Upon formal application to classify said judgment being made, respondent as judge of the probate court declined to classify the judgment or to take cognizance thereof, other than to determine that it had no jurisdiction and made the following order:

"Now at this day, the matter of the application of Elizabeth C. Knisely, administratrix of the estate of Charles H. Knisely, deceased, asking for the classification of a certain judgment for $192,263.75 in her favor as said administratrix, and against Grace A. Leathe, executrix of the estate of Samuel H. Leathe, deceased, as a debt and claim against the estate of Samuel H. Leathe, deceased, coming on to be heard, and said Elizabeth C. Knisely, administratrix, presenting in court thereof certified copy of said judgment of the circuit court in the city of St. Louis, Missouri, and a certified copy of the mandate of the Supreme Court of Missouri, directing the entry of said judgment for said above-mentioned sum in favor of said Elizabeth C. Knisely, administratrix, and also offering in support thereof the files of the circuit court of the city of St. Louis, showing that the said suit of Elizabeth C. Knisely, administratrix of the estate of Charles H. Knisely, deceased, against Grace A. Leathe, executrix of the estate of Samuel H. Leathe, deceased, was begun on August 1, 1907, and service of process had on Grace A. Leathe, executrix, on September 7, 1907, and the subsequent dismissal of said suit in the absence of counsel for plaintiff therein, and the institution of another suit by said Elizabeth C. Knisely, administratrix, against Grace A. Leathe, executrix of the estate of Samuel H. Leathe, deceased, and which said files last mentioned of said circuit court also show said cause was disposed of by demurrer and motion to strike out plaintiff's petition in the said circuit court in St. Louis, Missouri, resulting in judgment for de-

fendant, followed by appeal to the Supreme Court and reversal by the Supreme Court, and a subsequent trial before a jury in the circuit court of St. Louis, Missouri, resulting in judgment for defendant, followed by appeal to the Supreme Court, where judgment of the circuit court was reversed and the cause remanded with directions to circuit court of city of St. Louis, Missouri, to enter judgment for the plaintiff for the sum of $107,500, together with interest at six per cent thereon from the 17th day of May, 1902, to the date of the entry of the judgment of circuit court, and said Elizabeth C. Knisely, administratrix, also offered in evidence of the support of said claim the record entries throughout all of the above proceedings in the circuit court of the city of St. Louis, Missouri, as the same appear spread upon the record of the circuit court of said city, and Grace A. Leathe, appearing as distributee, by her counsel, objected to the court entertaining the application for the classification of the said judgment for the reason that on July 7, 1909, as shown by the records of the probate court of the city of St. Louis, Missouri, final settlement of the estate of Samuel H. Leathe, deceased, was made and the executrix, Grace A. Leathe, was discharged, and therefore the probate court of the city of St. Louis had and has no jurisdiction whatever over said estate and no jurisdiction to classify the said judgment and claim, and the court having duly considered said objection, does sustain the same and refuses to entertain the application for the classification, and refuses to act in the matter because of no jurisdiction in the probate court on account of the said final settlement of the estate of Samuel H. Leathe having been heretofore made on the 7th day of July, 1909.''

This immediate mandamus proceeding is to compel the probate court to classify the demand in accordance with the judgment and directions of this and the circuit court.

Such other facts as are pertinent to the issue will be stated in the opinion.

I.   Article 6, section 22, of our Constitution gives circuit courts exclusive original jurisdiction in all civil cases not otherwise provided for, and such *concurrent* jurisdiction with *inferior* courts as is or may be prescribed by law.

**Probate Court: Final Settlement.**

Section 34, article 6, of the Constitution provides for the establishment of probate courts and defines the bounds of their jurisdiction.

The doctrine announced by PHILIPS, P. J., in Richardson v. Palmer, 24 Mo. App. 480, that section 34, supra, did not vest in the probate court exclusive, but merely concurrent jurisdiction, with other courts of record, to entertain suits against administrators for the establishment of demands against estates, has been uniformly approved and acted upon in this State [State ex rel. Ziegenhein v. Tittmann, 103 Mo. l. c. 566-7; Wernse v. McPike, 100 Mo. l. c. 486; Matson & May v. Pearson, 121 Mo. App. l. c. 134; Stephens v. Bernays, 119 Mo. l. c. 147; Knisely v. Leathe, 256 Mo. 341.]

Section 197, Revised Statutes 1909, valid by virtue of section 22, supra, of the Constitution, in terms certain, authorizes the establishment of such demands in circuit courts. Relator was, therefore, properly within her rights and proceeding in an orderly and legitimate way when she instituted suit in the circuit court to establish her demand against the Leathe estate, then in the process of administration. There is also no doubt that the suit was begun and summons served within one year after the granting of the first letters of administration, and that service was properly had on the person then duly authorized and acting as executrix of the estate. It has heretofore been adjudged by this court (Knisely v. Leathe, 256 Mo. 341), and is so written in the statute (Sec. 193, R. S. 1909), that

the service of this summons constituted, within the meaning of the statute, an exhibition of the demand sued upon. The record further establishes that, in obedience to the writ of summons, the executrix duly appeared and entered fully upon a defense in behalf of the estate, and after prolonged litigation a judgment for approximately $196,000 was rendered. It cannot be gainsaid that by these proceedings all statutory requirements for the establishment of the demand were met, and that the circuit court acquired jurisdiction of (1) the subject-matter, or the demand of relator; (2) the person of the legal representative of the estate, and (3) the estate, in so far as this demand and the right to have it determined were concerned.

What was the purpose of this suit, and the extent and effect of the jurisdiction thus acquired? The purpose of the suit was to finally establish the liability of the estate and relator's right to have it satisfied by the estate and while the estate was a legally existing thing, and the jurisdiction of the circuit was co-extensive with this purpose and right. The estate of a deceased person is a distinct legal entity, and the statute prescribes that it shall remain in existence as such until its demise comes orderly, peacefully and as the law ordains. No mystery surrounds its creation, existence, departure or future. We know whence (and why) it cometh, and whither (and when) it goeth. It comes primarily for the purpose of paying the debts of its former master and to remain until that is done, and when this mission is performed and these labors put to an end, it is ready for dissolution and the law's decree as to the distribution of its dismembered parts. The estate and its legal representative being in the circuit court and within that court's lawful jurisdiction for the *express* purpose of having determined one of the *very* things upon which its right to exist or cease to exist depended, namely: whether it was in debt, by what means could it tear itself from that jurisdiction

and abruptly end its existence? If justification there be for this unusual and peculiar course it must be found in the written law. The jurisdiction of the circuit court, having first and lawfully attached, could be ousted or divested only by statutes *clearly* so providing. [Seibel v. Simeon, 62 Mo. 255; Ryans v. Boogher, 169 Mo. 673; Smiley v. Cockrell, 92 Mo. l. c. 111; State ex rel. v. St. Louis Co. Ct., 38 Mo. 402; State ex rel. v. Reynolds, 209 Mo. 161; 11 Cyc. 987.]

With this in mind, we turn to section 197, Revised Statutes 1909, which authorized the filing of this suit and the establishment of this demand in the circuit court, but search as we have, we fail to find anywhere a provision that after the suit is filed the same shall abate or the jurisdiction of the circuit court divest *whenever* it shall *appear* to the probate judge that all debts have been allowed, or the estate has been fully administered, or the probate court has made such an order. Have we authority to write into this section this important and far-reaching provision? We refer those to whom the answer is not self-evident to such cases as Orthwein v. Germania Life Ins. Co., 261 Mo. 650; and Stephens v. Gordon, *ante,* p. 207. What would have been the position and probable order of the circuit court, or of this court, depending upon where the cause was pending, had the probate court notified either that, notwithstanding such superior courts had jurisdiction, of both the person and the subject-matter, *it* had determined *all* matters pertaining to the estate, including that involved in the suit, and had decided that the estate was fully administered and that such superior courts could not further lawfully proceed?

We have also examined section 196, Revised Statutes 1909, which requires executors to keep a list of all demands exhibited and make return thereof to the probate court; as well as section 193, which makes service of process in a suit a legal exhibition of the claim,

but we have been unable to find any provision making
the effect and application of these sections depend, in
cases of suit, upon whether such suits are prosecuted
to a final judgment before the probate court allows a
final settlement to be made. Or, otherwise, expressing
the results of our statutory research, we have not so
far found that after such jurisdiction attaches its du-
ration depends upon the precision or imprecision with
which things *appear* to the probate judge, or the slow-
ness or speed with which he makes orders. I have al-
ways understood, that principal among the distinguish-
ing characteristics of our governmental scheme and
system, were our fixed and uniform rules of action, in-
stead of the varying, though honest, views of those
entrusted with power.

. In Smiley v. Cockrell, 92 Mo. l. c. 112, SHERWOOD,
J., speaking, said: "I do not believe that, in any
event, the jurisdiction of the circuit court having *once*
attached could be divested by any subsequent action of
the probate court, pending litigation in the former
court. [Seibel v. Simeon, 62 Mo. 255.]" In Nolan v.
Johns, 108 Mo. l. c. 437, MACFARLANE, J., said: "It has
been held by this court, and justly, too, that an admin-
istrator cannot defeat the jurisdiction of the circuit
court when once acquired, by making final settlement
of the estate and obtaining an order of discharge as
such administrator from the probate court. The ends
of justice could not be thus defeated. For the same
reason no action by the administrator, or order of the
probate court removing him from his trust, or accept-
ing his resignation, could deprive the circuit court of
its jurisdiction to proceed to the determination of the
matter before it." In In re Hutton's Estate, 92 Mo.
App. l. c. 139, SMITH, P. J., speaking for the court,
said: "The jurisdiction of the circuit court having
once attached, would not be divested by any subsequent
action of the probate court pending the litigation in

that court; nor in this, because to make a final settlement under such conditions would be a fraud, since the estate was not then fully administered and could not be until the claim made by the exceptors was finally adjudicated or in some way extinguished.'' In Ryans v. Boogher, 169 Mo. l. c. 683, it is said:. ''If this is true in all its broadness, it will follow that one who has a claim against an estate may bring it in a court to which jurisdiction is expressly given to hear and adjudicate it, and may commence it within the time designated by statute, and yet if for any reason final judgment is not rendered in his behalf within two years from the taking out letters testamentary or of administration, the judgment cannot be enforced against the estate. In a word, it matters not that the plaintiff or claimant is diligent and guilty of no laches whatever, if for any reason the proceeding does not ripen into a judgment within two years and is not classified, it amounts to nothing so far as receiving satisfaction is concerned. Heretofore the statute has received no such construction.''

Looking at and analyzing respondent's return and briefs, we find the contention that both the estate as an entity and its executrix as a legal representative were extinguished and withdrawn from the jurisdiction of the circuit and this court by reason and means of the action of the probate court in declaring the estate fully administered and finally settled, and that this action and these results are authorized and made lawful by section 239, Revised Statutes 1909. This section provides that ''if it appear to the court [probate] that such notice was duly published [notice of final settlement], and that the estate of the deceased has been *fully administered,* the court shall make final settlement.'' This section expressly names but two conditions which must appear to the court before it is warranted in making the settlement: (1) That notice

thereof has been duly published, and (2) that the estate has been fully administered; but is there not another thing which *must appear* and *actually exist* before the court can lawfully determine either of these? Must it not have complete jurisdiction over *such matters* before it can lawfully and finally determine them, and when part of the estate and one of the *very* things which must appear before the probate court can lawfully act is within the lawful and exclusive jurisdiction of *another* and *superior* court for determination, has it jurisdiction to pass on that thing? Statutes *in pari materia* should be read together and so construed as to keep all provisions of law on the same subject in harmony and effect, if possible.

Let us look now to the conditions prevailing when the alleged final settlement was made. A suit on demand, which subsequently ripened into judgment, was pending, by reason of another statute, in a court of competent jurisdiction against the estate. The legal representative of the estate was present and actively defending the estate against the suit. The subject of litigation, that is, the liability of the estate thereon, and the estate itself for this purpose, were in the exclusive jurisdiction of that court, the probate court not having even attempted to entertain jurisdiction thereof. There were then available assets belonging to the estate with which to satisfy the judgment, either in whole or part, if any were rendered, and these assets, under the law, were held in trust for this purpose. Until the estate's liability on this demand was determined the estate was not fully administered. [In re Hutton's Estate, 92 Mo. App. l. c. 139; Ryans v. Boogher, 169 Mo. 673; Smiley v. Cockrell, 92 Mo. l. c. 111.] The probate court had no jurisdiction to determine this liability (Ryans v. Boogher, 169 Mo. l. c. 685), or whether the claim should or should not be allowed and

paid.   Did it then have the *necessary jurisdiction* to determine that the estate was fully administered?

Our law provides a complete plan and scheme for the administration and final settlement of estates.   It requires that demands be exhibited within a specified time, or be forever barred, and that during the time so allowed the estate shall be preserved and held in trust for the satisfaction of such lawful demands.   It provides that after demands are exhibited they shall be legally established and prescribes the procedure by which and the forums in which this shall be done, and how and when they shall be paid.   It places all claims of the same class on the same basis and contemplates that all questions of liability will be determined and all discharged before legatees or devisees shall participate.   Recognizing the uncertainties and delays frequently attendant upon such matters, it fixes no definite *time* when the estate shall be finally settled, but names a condition which determines this, that being, when fully administered; and that condition is of such a nature as to enable the law to fully carry out its purpose.   Further recognizing, however, that after an estate has fulfilled its chief function, that is, submitted itself to the payment of lawful debts, the remainder should go to those entitled thereto, it provides for a final settlement.   Such a settlement, when lawfully made, destroys the estate as an entity and removes all powers of its lawful representative.   Its substance is distributed and its demise becomes complete.   If the settlement by respondent in 1909 was *lawful* and *final* it had this effect on the jurisdiction of the circuit and this court.   Absent grounds of estoppel, etc., it effectively removed from that jurisdiction the person of the legal representative of the estate, because her representative capacity was then and thereby terminated.

Adopting respondent's view that under our system of laws there is no such thing as an administrator

*ad litem* or *pro hac vice,* and that the power to appoint representatives of estates dwells only with the probate court, neither this nor the circuit court could have appointed anyone to represent the defendant in that litigation, and the cause would necessarily have, abated, unless, perchance, the probate court, acting with authority, appointed an administrator *de bonis non.* But, pursuing this subject, further, we find that the probate court has no authority to appoint such an administrator for this purpose. After final settlement an administrator *de bonis non* can be appointed *only* upon the discovery of *unadministered assets,* and then only when there are unpaid *allowed* demands against the estate. [Sec. 54, R. S.. 1909.] Respondent says, however, that notwithstanding his action did destroy the jurisdiction of other courts over the person it was justifiable, because had he removed the executrix (Sec. 50, R. S. 1909), or had she died (Sec. 54, R. S. 1909), or resigned (Sec. 51, R. S. 1909), such jurisdiction would have been destroyed. The answer to this, however, is clear, and is that in such cases the person is removed from the jurisdiction *lawfully* and in a manner provided, and in all such cases ample provision is made for the immediate appointment of a sucessor, who, upon mere motion, is substituted and all interference with the other jurisdiction is thereby avoided. Absent the jurisdiction and lawful proceedings of the probate court (Sec. 50, R. S. 1909) to remove an executor, its order attempting such would not remove; and that is the deadly parallel between the cases cited by respondent and the one at bar. Is there not some significance in the failure of the Legislature to provide for the appointment of an administrator or representative under conditions which have existed in connection with this demand, or some arrangement by which it could be satisfied after establishment, if, in point of law, the settlement made by respondent, which ex-

cluded it, was lawful. After expressly conferring up-
on circuit courts the power and jurisdiction to deter-
mine matters so important to the estate and its credi-
tors, does it not seem strange that no provision is
made for making this power effectual, if the probate
court can, whenever certain things *appear to it,* and
regardless of actual conditions, decree the extinguish-
ment of the estate and the legal capacity of its repre-
sentative, as well the incapacity of the claimant to fur-
ther lawfully proceed? Not only did this settlement,
if valid, remove from our jurisdiction and end the ca-
pacity of the legal representative, but the estate as
well, and until resurrected by another suit and suc-
cessful trial on altogether different issues, it too was
snatched from our hands and placed beyond our reach.
Relator had a lawful right to have her claim, when
properly established, allowed against the original es-
tate. She was proceeding to this end in a lawful way,
and now must she resurrect and breath life into some-
thing which she did not destroy, and something which
upon its uncertain reappearance may be without sub-
stance? Let the gory locks shake at those who did it.
The law must be so construed as to avoid clashes and
conflicts between courts and their jurisdiction, other-
wise confusion and chaos will come out of what is in-
tended as order.

It is our opinion that the determination of rela-
tor's demand was a part of the administration of the
estate, and this being lawfully in the exclusive jurisdic-
tion of the circuit and this court, the probate court
did not have the necessary jurisdiction to pass upon
the question of whether the estate was fully adminis-
tered, and by reason thereof its settlement of July 7,
1909, purporting to be a final settlement, had only the
effect of an annual settlement, and beyond this was ab-
solutely void. Our conclusion in this respect seems to
be in perfect harmony with the course and conduct of

the estate's legal representative and attorney. Notwithstanding the alleged final settlement in 1909, and the alleged discharge of the executrix, she, in the capacity of an executrix and without the remotest suggestion of her legal incapacity, has continued for a period of six years since to appear in this and the circuit court to defend this action. Twice in the circuit court on trial, and twice in this court on appeal, has she appeared and defended in a representative capacity. "Wherefore do ye spend money for that which is not bread, and your labour for that which satisfieth not?" (Isa. 55 : 2), and why make others work "for the meat which perisheth?" (John, 6:27).

In Smiley v. Cockrell, supra, (1. c. 112), this court made the following observation in this relation: "And in this connection, it is not to be forgotton that these same executors appeared in this court in 1883, and took part in the appeal, although they *now* claim that they had made their final settlement and were discharged in 1881. Such subterfuges are not to be tolerated in a court of justice." We shall impute no bad faith to the parties who have thus acted, but shall content ourselves with the belief that their views on the law were in accord with ours.

II. In the preceding paragraph we have considered only the lack of the probate court's jurisdiction because of the concurrent and exercised jurisdiction of other courts, and

Final
Settlement:
Collateral
Attack.

have not dealt with the question, exhaustively briefed by both parties, as to whether in cases where demands are not pending in other courts the matter of an estate being fully administered is itself jurisdictional, and if in point of fact it is not fully administered the probate court is wholly without jurisdiction to make a final settlement. As heretofore pointed out, the authority for final settlements is found exclusively in section 239,

Revised Statutes 1909, and before such can be made it must appear to the court that notice was duly published and the estate has been fully administered. It will be observed that no distinction is made in the method or tribunal provided for determining whether notice was duly published and the estate has been fully administered. The language employed is the same as to both requirements. It has been uniformly held in this State that in point of fact due publication of notice must be had in order to give the settlement the force and effect of a final settlement, and if it is not, the settlement, as a final one, is void, and subject to collateral attack, and this notwithstanding the manner in which the point *appeared* to the probate court. [Brashears v. Hicklin, 54 Mo. l. c. 104; Van Liew v. Beverage Co., 144 Mo. 509; Lenox v. Harrison, 88 Mo. 491; Mead v. Bakewell, 8 Mo. App. l. c. 553; May v. May, 189 Mo. l. c. 502; Ratliff v. Magee, 165 Mo. 461.] If publication of notice is a fact which must *really* exist, regardless of the probate court's decision thereon, I see no escape from the conclusion that full administration of the estate is a fact which must likewise exist, as we cannot make fish of one and flesh of the other. It may be argued, however, that this does not follow, because notice is something specifically required by another section (section 238, Revised Statutes 1909), while there is no such express requirement as to full administration; but this is not correct. Throughout our whole scheme and system of administration law we find an ever-present and never-resting idea that the estate be fully administered before it be finally settled and distributed, and the express language of section 239, supra, to this effect is but stating generally a requirement logically deduced from the harmonious effect of the law as a whole. Our administration laws, when taken together, constitute a congruous, coherent and complete system, and when we observe the absence

of any provision for further administration after settlement is made (except in one event which could not be covered by the original administration) the view of full administration before final settlement materially strengthens. But why muse upon this, when this court has already said in Ryans v. Boogher, 169 Mo. l. c. 686: "It is clear that the probate and circuit court correctly ruled that defendants had no right to make a final settlement until they had discharged the debts of the deceased which had been reduced to judgments. Until then they had not 'fully administered' the estate, and until then the devisees and legatees had no right to receive the estate in their hands." In the case just quoted from, this court held that until all debts were paid, and all suits in other courts were finally determined, a final settlement was not warranted; and in Smiley v. Cockrell, 92 Mo. l. c. 111, the court said: "Under the provisions of section 239, R. S. 1879, the probate court is not authorized to make final settlement, unless the estate is *fully administered,* but an estate cannot be said to be fully administered, while the demands of creditors remain unadjusted and unsatisfied, and that which should have gone in satisfaction of their demands is diverted from its legitimate purpose to the satisfaction of claims which should always be subordinated to the demands of executors." In In re Hutton's Estate, supra, it is said: The estate could not be fully administered "until the claim made by the exceptors was finally adjudicated or in some way extinguished."

Relator has also presented various authorities from other jurisdictions seemingly holding in accord with the above cases, and further holding that until the estate is fully administered a final settlement cannot be lawfully made and is void for lack of jurisdiction. Most of these cases were decided upon statutes not altogether like ours, but similar in many important

266Mo.24

respects. Among these cases are the following: Pollock v. Buie, 43 Miss. 1. c. 149; Henderson v. Winchester, 31 Miss. 1. c. 294; Dogan v. Brown, 44 Miss. 235; Blanchard v. Williamson, 70 Ill. 647; Sutherland v. Harrison, 86 Ill. 363; Starr v. Willoughby, 218 Ill. 485; People v. Rardin, 171 Ill. App. 226; and we refer those who desire to pursue this subject further to these.

As tending to support the doctrine that jurisdiction to approve final settlement does not depend upon the fact that the estate is fully settled, respondent cites certain Missouri cases, which we shall review.

In Ratliff v. Magee, 165 Mo. 461, it was merely held that a claimant who during the former administration had submitted himself to the jurisdiction of the probate court, and had his demand classified and paid only in part, because of insufficient assets, must proceed in accordance with the statute on *un*administered *assets* and *allowed* claims, when he relies upon the discovery of new and unadministered assets. There was then, as now, an express statute on that particular subject prescribing the procedure which should be followed in such cases.

McLean v. Bergner, 80 Mo. 414, was a suit to vacate and annul a final settlement, made ten years prior thereto, and was filed and tried upon the theory of lack of notice and fraud in procuring settlement.

Robards v. Lamb, 89 Mo. 303, deals merely with an administrator *pendente lite,* and does not involve any question of the settlement of *estates.*

Smith v. Hauger, 150 Mo. 437, was decided upon questions of fact, estoppel and insufficient summons.

Clyce v. Anderson, 49 Mo. 37, was a direct action to set aside a final settlement for fraud, and conceded the validity of the settlement, unless fraud in procuring same was established.

Michie v. Grainger, 149 Mo. App. 301, is a case decided by the Springfield Court of Appeals, and holds

that after an administrator makes final settlement and full distribution of the estate's assets, he cannot if he discovers that he has failed to pay a certain allowed claim personally pay this and take an assignment of the claim and then recover thereon from the devisees, unless he has his former settlement set aside.

In all of these cases the general doctrine is announced that where a final settlement is made, in accordance with the law then in force, it has the force and effect of a final judgment. Aside from this general pronouncement, the correctness of which all concede, these cases, unless it be the Court of Appeals decision, supra, contain nothing bearing upon the question here presented.

In view of the purpose and effect of our laws on administration, the provisions they do and do not contain, and of our former adjudications, we are of the opinion that a probate court is without the jurisdictional power to approve a final settlement as long as in fact demands are legally pending and undisposed of in either the probate court or other courts of record, and there are available assets for their satisfaction. This doctrine is in keeping with justice and orderly procedure, and less capable of abuse than the contrary. The legal representative of an estate and the probate courts are provided with every means and facility necessary to readily ascertain whether demands which have been made of record are undisposed of and an estate has been fully administered, and their failure to use these and do their duty should not be made a lawful means of defeating just and lawful demands, or the very ends for whose accomplishment they are created and maintained. We cannot bring ourselves to the conviction, that regardless of the number of legally established demands there may be against an estate, demands of whose existence the officers know, or should know, a settlement which ignores

and excludes them and which diverts the estate's assets from their lawful payment to other subordinated purposes can be legal and binding. Before a condition can be said to have *appeared* to exist there must be some reasonable and lawful justification for such *appearances*.

III.    Our conclusion that the alleged final settlement had only the force and effect of an annual settlement necessarily disposes of the ques-

Discharge of Administrator.

tion of the effect which that settlement had on the legal capacity and authority of the executrix, and it is unnecessary for us to consider the numerous cases cited in this relation. Not having been finally and lawfully discharged she has been at all times since she qualified, and yet is, the legal representative of the estate, and the estate is bound by all judgments in cases where she as the representative was duly 'served.

IV.    Is *mandamus* a proper remedy in this instance? In former adjudications this court decided that relator's claim had been legally and

Remedy by Mandamus.

timely exhibited against the estate, and that relator was entitled to a judgment in a certain and fixed sum, and directed that such judgment be entered. It also held that this judgment claim was entitled to classification in the fifth class of claims. When the record of all these matters were presented to respondent he disregarded the direction and ruling of this and the circuit court and refused to act upon the application and classify the claim, basing his action solely upon the lack and absence of jurisdiction. His decision that he had no jurisdiction was based entirely upon admitted and undisputed record facts. This court has so recently and exhaustively (in State ex rel. v. Homer, 249 Mo. 58) reviewed the authorities upon this subject that we can do no better in

stating our general doctrine than by reproducing what is there said:

"Nor will mandamus usually issue where there are other adequate remedies, but in the light of this rule the other remedies or remedy must be fully adequate. The mere fact that there might be another remedy is not sufficient to preclude the use of the writ of mandamus. The other remedy must be adequate, and whether it is adequate is one appealing to the judgment and discretion of this court when the circumstances of each case are laid before us. . . . The circuit court had in a way determined its jurisdiction over the defendants in the circuit court case, but its determination was upon admitted and undisputed record facts. Whether that court had jurisdiction of the defendants thus became a pure question of law. It may be that an appeal or some such remedy was at hand, but was that remedy adequate? Under the facts we could have well said that it was not.

"But aside from this there is much respectable authority to the effect that mandamus is the only proper remedy where a circuit court refuses to proceed with a case, because the court was of opinion that it did not have jurisdiction of the cause, or of the parties to the cause. In the circuit court case the trial court refused to entertain jurisdiction and proceed with the case upon a preliminary objection to the return of service to the process. In the very early case of Castello v. St. Louis Circuit Court, 28 Mo. l. c. 274, we had up a very similar question. The question there was whether a notice of contest in a contested election case was sufficient to give the circuit court jurisdiction to hear and determine the case upon its merits. The circuit court held the notice insufficient and refused to proceed further with the case. This court issued its alternative writ and then proceeded to determine whether or not the trial court was right or wrong in

refusing to proceed .further. ' We held that the trial court was right and that the notice was insufficient, and denied the peremptory writ for that reason, but in the course of the opinion we thus spoke upon the question in issue here:

"'Upon the facts disclosed in the petition in this case for a mandamus upon the circuit court, a majority of this court determined that a conditional mandamus should be awarded, and it was accordingly so ordered. This determination was based upon the principle that where an inferior judicial tribunal declines to hear a case upon what is termed a preliminary objection, and that objection is purely a matter of law, a mandamus will go, if the inferior court has misconstrued the law. The cases of the King v. The Justices of the West Riding of Yorkshire, 5 Barn. & Adol. 667, and Rex v. The Justices of Middlesex, 5 B. & Ad. 1113, The King v. Hewes, 3 Ad. & Ellis, 725, and Regina v. The Recorder of Liverpool, 1 Eng. Law & Eq. R. 291, are believed to be conclusive upon this point so far as the English authorities go; and our attention had not been directed to any American cases conflicting with this view of the law. If the circuit court declined to go into the merits of the case because the party complaining had not given the notice required by the statute, that was a preliminary objection upon a point of law which this court can review upon a writ of mandamus; and if the circuit court called for a notice which the statute did not require, the mandamus ought to be made peremptory.

"'It is not deemed important to go into any examination of this question, since upon the return to the conditional mandamus by the circuit court, we were satisfied that the construction which that court gave to the statute was correct.'

"So in the case at bar. The trial court entertained an objection to a preliminary matter and then

refused to proceed further. The return was before the court and was therefore an undisputed fact, and it was thus a pure question of law as to whether the court should hear the case upon its merits. The doctrine of the Castello case, supra, has since met with the express approval of this court in the later case of State ex rel. Bayha v. Philips, 97 Mo. l. c. 347. This latter case was a mandamus against the Kansas City Court of Appeals. Over the protest of Bayha that court had dismissed a case appealed by Bayha for the reason that it was made to appear to the court by motion of the respondents that the tax bills which Bayha sought to have cancelled by his bill had in fact been cancelled. In the case SHERWOOD, J., discusses at length the powers of this court by mandamus against inferior courts and in closing, thus speaks:

" 'But as already shown, the Constitution has conferred on this court more enlarged powers, and consequently the rulings on the point in courts of others jurisdictions, not possessed of such ample powers, can have no application here. And whatever the rulings of other courts may have been in respect to the issuance of writs of mandamus, the rulings of this court, heretofore made, establish that this court will award its writs of mandamus: Where the St. Louis Court of Appeals refused to take a bond for an appeal to this court on the ground that the appeal having been granted, that court had no further jurisdiction of the cause. [State ex rel. v. Lewis, 71 Mo. 170.] Where a circuit court refused to enter judgment on a verdict, but granted a new trial. [State ex rel. v. Adams, 76 Mo. 605.] When a trial court ordered a cause to be "dropped from the docket." [State ex rel. v. Cape Girardeau Court of Common Pleas, 73 Mo. 560.] Where a trial court determined it had no jurisdiction of a criminal cause, by reason of the unconstitutionality of a statute and ordered the cause transferred to

another court. [State ex rel. v. Laughlin, 75 Mo. 358.] To compel the judge of a trial court to enter a judgment on a verdict, which he had refused to receive, because the jury by that verdict found for the defendants, but required them to pay the costs. [State ex rel. v. Knight, 46 Mo. 83.] In Castello v. Circuit Court, 28 Mo. 259, it is said: ''If the circuit court declined to go into the merits of the cause because the party complaining has not given the notice required by the statute, that was a preliminary objection upon a point of law which this court can review upon a writ of mandamus; and if the circuit court called for a notice which the statute did not require, the mandamus ought to be made peremptory.''[ See also, Miller v. Richardson, 1 Mo. 310.]'

''And in this same case at page 343 we thus cite with approval the case of Ex-parte Schollenberger, 96 U. S. 369:

'' 'In Ex parte Schollenberger, 96 U. S. 369, the circuit court, in which the suit was brought, because of opinion it had no jurisdiction, quashed the process, and it was held that mandamus would lie to compel it to reinstate and hear the cause, as it had jurisdiction, though it had erroneously decided to the contrary.' The California Court of Appeals has likewise quoted from and approved the Castello case in the case of Hill v. Superior Court, 114 Pac. l. c. 808 et seq. In the Hill case, the lower court had quashed a citation in an election contest case and thereby refused to hear the contest. In the course of that opinion it is said:

'' 'At the time and place appointed for the holding of said special session the court quashed the service of said citation, and refused to hear the contest of petitioner, for the reason that the notice to the court by the clerk was given and the order of the court fixing the special session was made prematurely, and the citation was issued prior to the time fixed by the stat-

ute.   Upon application to this court, an alternative
writ of mandate was issued, and it is now sought to
have it made peremptory upon an answer admitting
all the facts set out in the petition.   While, technically
speaking, the order of the court below simply directed
the citation to be quashed, it amounted to a refusal to
proceed with the trial of the contest on the ground that·
the court had no jurisdiction of the person of the con-
testee by reason of the premature order and service as
aforesaid.   .   .   .

" 'As we view it, then, the trial judge, upon a
preliminary matter, decided contrary to the law and
the facts, that the court had not acquired jurisdiction
of the "contestee," and therefore was not authorized
to proceed with the trial at the time appointed.   Upon
our understanding of the statutory provision, the court
had and still has jurisdiction of the subject-matter and
of the parties, and it was its plain duty to proceed to
trial at the time appointed.   It could not divest itself
of this jurisdiction by an order purporting to quash
the citation, nor is there a case presented here of juris-
diction to decide wrong as well as right beyond the
reach of the writ of mandate.   Where there is no con-
flict as to the facts and in the judgment of the higher
tribunal those facts confer jurisdiction and make it
clearly the duty of the lower tribunal to proceed with
the trial of the cause, if there is no other adequate
remedy, the writ of mandate will issue commanding
such action.   .   .   .

" 'The authorities are in line with these reflec-
tions.'   The California court likewise quotes with ap-
proval what this court said in the Bayha case, 97 Mo.,
supra, concerning the Schollenberger case, 96 U. S.
369.   It will be noticed that the California court lays
some stress upon there being no conflict of facts in
matters touching the jurisdiction or right to proceed.
In the case at bar the facts stand admitted and undis-

puted. They are in fact bound up as a part of the judgment roll. This court, like the California court, has made some observations as to the admitted facts concerning jurisdiction, and in what cases the extraordinary writ will issue. Thus in State ex rel. Crouse v. Mills, 231 Mo. l. c. 500, we said:

" 'Where the jurisdiction of the probate court is dependent upon the fact of the person being within the territorial jurisdiction of the court, a writ of prohibition will not lie to prevent the probate court from investigating the necessary facts to determine its own jurisdiction, nor could prohibition be granted to prevent an entry of the court's judgment, whether that judgment be right or wrong, as to the jurisdiction over the person. In other words, if the law determines the right of a court to entertain or not entertain jurisdiction of a case, then prohibition will lie, but if jurisdiction is contingent upon facts, unless such facts be admitted and not disputed, the lower court has the right to determine its jurisdiction from the facts before it.'

"The latter clause of the quotation is the more applicable portion. But in the case at bar the actual return was admitted and not denied. It was a part of the files of the case the circuit court was then dealing with and the circuit court was simply determining whether it would proceed or not proceed upon an admitted fact. Other courts have followed the same trend of thought, thus:

"The Supreme Court of the United States, In re Hohorst, 150 U. S. 663, issued a mandamus, directing the United States Circuit Court of the Southern District of New York to take jurisdiction of and proceed with the trial of a case, in which the circuit court had set aside and quashed the service and dismissed the suit, saying: 'The Hamburg-American Packing Company being liable to this suit in the Circuit Court of the United States for the Southern District of New

York if duly served with process in the district, and having been so served, and the order of that court dismissing the suit as against the corporation not being reviewable on appeal at this stage of the case, there can be no doubt that mandamus lies to compel the circuit court to take jurisdiction of the suit as against the corporation.'

"The Supreme Court of Alabama, on January 20, 1910, in Ex parte Hill, 51 So. 786 (Syl. 4), held: 'Where the court makes an order quashing the service of process on an unincorporated association, which order is erroneous and works an injury to the plaintiff in the action against the association, and no appeal lies from the order, and no other remedy exists, mandamus will issue to the judge, commanding him to vacate the order.'

"The Supreme Court of Florida, in State ex rel. v. Wills, Judge, 38 So. l. c. 291, said: 'Another contention for the respondent is that the issuance of a writ of mandamus in this cause would be a review of his judicial discretion, which can properly be done only by appropriate appellate proceedings, the respondent claiming that he had assumed jurisdiction of the cause by entertaining and granting the motion to dismiss the appeal, thus determining a question of practice only. It is conceded that the appeal was dismissed because no writ of error had been issued in the cause, and that the court held that the issuance of a writ of error was necessary to give the court jurisdiction of the appeal. A dismissal on the ground of the want of jurisdiction is not such an assumption of jurisdiction as to require its review by appellate proceedings.'

"The question was directly decided in Hill v. Morgan, 76 Pac. 323. The trial court, in that case, held that the summons was insufficient to give it jurisdiction to hear the cause, and set aside the service of the

summons. It was held (Syl. 1-2): 'The rule that mandamus will not issue to control discretion or revise judicial action has no application to the determination of preliminary questions relating to the sufficiency of the service of summons. When the tribunal or officer whose duty it is to take jurisdiction of a matter, and believing erroneously that it has no jurisdiction, declines to consider the matter, mandamus will issue to compel action.'

"In People ex rel. v. Judge of Wayne Circuit Court, 22 Mich. 493, it is held: 'Where suit is commenced by declaration against the maker and indorsers of a promissory note in the circuit court for the county where the indorsers reside,. the service is first duly had in said county upon the defendants residing herein, and thereupon, by virtue of Act No. 54 of 1869 (Sess. Laws 1869, p. 101), service is made upon the maker, who resides in another county, by the sheriff of the county where maker resides, and the circuit court on motion, orders such service, as to said maker, to be set aside as unauthorized by said statute, mandamus will be granted to compel said court to vacate said order.'

"Returning now for some analogous cases in Missouri. In State ex rel. v. O'Bryan, 102 Mo. 254, we have a case where a cause was sent by change of venue from the Cape Girardeau Court of Common Pleas to the circuit court of Scott county. The latter court held that the cause had been improperly sent to it and ordered it stricken from the docket and the papers returned to the common pleas court. The common pleas court, holding that it had lost jurisdiction, ordered the papers returned to the circuit court of Scott county. That court then dismissed the cause. This court was then applied to for a writ of mandamus and one was awarded. In that case (l. c. 259), we said:

" 'It had been urged that inasmuch as the Scott Circuit Court had made its final order remanding the cause to the common pleas court, and inasmuch as the latter court, after this was done, simply made its order directing the return of the papers to the Scott Circuit Court, that therefore the latter court is not vested with jurisdiction to try the cause, etc. To this objection it may be answered that the order made by the Scott Circuit Court as aforesaid was *coram non judice.* That court had no more authority under the law and the facts to make such an order than it would have had to have sent the cause to the circuit court of Mississippi county. Such orders are nullities and consequently oppose no barrier to a correct method of procedure when the error committed is ascertained. [State v. Gabriel, 88 Mo. 631.] Nor is it any obstacle to the obtaining of the proper relief here, because the lower court has acted. [Bayha's Case, 97 Mo. 331, and cases cited.]

" 'Nor would an appeal or writ of error afford any substantial or effectual remedy in a case of this sort. Were an appeal taken in an instance like the present, there would be nothing to pass upon, no errors to correct; for no trial had occurred. It is not the intention of the law to permit a cause to be bandied about like a shuttle-cock from court to court without affording a more effective and prompt relief than would be afforded by an appeal or writ of error.

" 'The premises considered, we do not doubt that this is an appropriate occasion for the exercise of our supervisory control and mandatory authority and consequently we issue our peremptory writ. All concur.'

"And in a separate opinion Barclay, J., further said:

" 'Under the statutes governing this case, fully set forth in the foregoing opinion, it appears to me that the learned judge of the Scott County Circuit

Court was in error in refusing to take jurisdiction of the cause referred to. While the plaintiff therein might properly have resorted to a writ of error or an appeal to rectify that ruling, it seems to me he was not necessarily bound to do so.

" 'Under the Constitution of this State, giving the Supreme Court "a general superintending control" over the trial courts (Const. 1875, art. 6, sec. 3), it is within the proper scope of the constitutional authority of this court to intervene by the writ of mandamus to reinstate a cause which has been erroneously stricken from the docket at the circuit, and in which a hearing there is absolutely denied. In such a case we think the party injured should not be put to the delay of an appeal.'

"So, too, we have by mandamus compelled the Courts of Appeals to reinstate and hear cases, after such courts had dismissed the appeals therein. [State ex rel. v. Smith, 172 Mo. 446; State ex rel. v. Broaddus, 210 Mo. 1; State ex rel. v. Broaddus, 234 Mo. 331; State ex rel. v. Broaddus, 239 Mo. 359.] In all these cases the Courts of Appeals had passed upon preliminary matters and disposed of the appeals without going into the merits. This court of necessity had and did examine into the same preliminary questions and holding opposite views upon the said preliminary questions directed the Court of Appeals to undo what it had done, and proceed to do what it should have done, i. e., decide the merits of the case.

"That an appeal in the case at bar and under consideration was not a full and adequate remedy is sustained by the following cases: State ex rel. v. O'-Bryan, 102 Mo. 254; Sedgwick Furniture Co. v. Craig, 160 Mo. App. 91; French v. Bennett, 72 S. E. 746; Mining Co. v. Fremont, 7 Cal. 130; People's Bank v. Burdett, 71 S. E. 399; 26 Cyc. 171."

This case, however, does not depend wholly upon such general doctrine. The writ should be awarded upon, if no other, the ground that it is a proper means of carrying out and giving effect to the judgment which this court directed and commanded. It is accordingly ordered that our preliminary writ be made permanent. *Woodson, C. J.,* and *Graves, Walker* and *Blair, JJ.,* concur; *Bond, J.,* concurs in separate opinion in which *Faris, J.,* concurs.

BOND, J. (concurring)—I concur in the learned opinion of our Brother Revelle for the following reasons:

The probate court had no *legal right* to close the administration pending a timely suit in the circuit court to establish a demand against the estate, for until that suit should be finally determined the estate could not be *fully* administered, and that court is only permitted to adjudge a final settlement after a full administration. [Sec. 239, R. S. 1909.]

When the certified copy of the judgment of the Supreme Court was presented to the probate court, the latter court was advised of a conclusively adjudged fact (a large indebtedness against the estate), which, if it had known at the time, would have prevented this judgment discharging executrix, and was further advised that the plaintiff in the judgment exhibited was entitled under the statute to have it filed as an established demand against the estate. Hence it was the plain duty of the probate judge, upon the exhibition to him of the final judgment of this court, to have ordered the proper classification of the said judgment as a demand against the estate of Samuel Leathe, and to have set aside and for naught held the entry on the records of the probate court of July 7, 1909, purporting to show a final settlement of said estate and the discharge of the executrix.

The facts warranting such action on the part of the probate judge were *conclusively* shown by the certified transcript of the proceedings and final decision and judgment of this court fixing the amount of the demand against the executrix of the estate.

Hence there was no necessity for the adoption by the plaintiff in that judgment of other modes of redress which might be applicable, except for the conclusive effect and the controlling force of the final decision and judgment of this court. *Faris, J.,* concurs in this opinion.