STATE OF MISSOURI, AT THE RELATION OF CLARENCE H. LEFHOLZ, (RELATOR), RESPONDENT, v. BERT E. McCRACKEN, JUDGE AND EX-OFFICIO CLERK OF THE PROBATE COURT OF WARREN COUNTY, MISSOURI, APPELLANT.—95 S. W. (2d) 1239.

St. Louis Court of Appeals. Opinion filed July 7, 1936.

*Dyer & Starkloff* for appellant.

*A. H. Juergensmeyer* for respondent (relator).

872

HOSTETTER, P. J.—This is a mandamus proceeding instituted in the Circuit Court of Warren County by relator, Clarence H. Lefholz, against Bert E. McCracken, judge and ex-officio clerk of the Probate Court of Warren County.

The following is a statement of facts which constitutes the genesis of this suit.

On November 13, 1933, letters testamentary were granted by the Probate Court of Warren County to Frank H. Koch, executor of the estate of Theo. F. Koch, deceased. On the 10th day of Novem-

.ber, 1934, suit was filed in the Circuit Court by Clarence H.. Lefholz, relator herein, against H. H. Wessel, and Frank H. Koch, executor of the estate of Theo. F. Koch, deceased, seeking judgment on a promissory note. Summons was issued, and personal service was had on H. H. Wessel and Frank H. Koch, executor, on November 12, 1934, being within the year following the issuance of letters testamentary· in the Probate Court. On January 14, 1935, Frank H. Koch, as executor, filed an answer, which was a general denial, and, not being verified it raised no issue of fact. On February 8, 1935, in the Circuit Court, judgment by default was rendered in favor of Clarence H. Lefholz, plaintiff in said suit, and against both defendants, in the sum of $1539.20. A certified copy of said judgment was filed in the Probate Court on March 13, 1935, which the Probate Court refused to classify as a claim or judgment against the estate, for the reason that theretofore, on February 13, 1935, the executor had made final settlement of said estate in that court. ·Thereafter on February 23, 1935, said Clarence H. Lefholz filed a motion in the Probate Court seeking to have set aside the order approving the final settlement and to approve the same as an annual settlement, which motion was overruled, or denied, by the Probate Court.

On April 15, 1935, said Clarence H. Lefholz as relator, instituted this mandamus suit to compel the probate judge to classify his said judgment as a demand against said estate and to order the payment of same out of the assets of said estate. The probate judge waived the issuance of the alternative writ of mandamus and entered his appearance and filed a demurrer to the petition, which was overruled, and then filed an answer, which was a general denial, and, after hearing the evidence, the trial court entered judgment making the writ of mandamus permanent, which directed the classifying of said judgment as a legal demand against said estate. Whereupon, the probate judge, after an ineffective motion for a new trial, brings the cause to this court by appeal for review.

Inasmuch as Clarence H. Lefholz is the relator in the mandamus suit and the respondent on appeal to this court, and Bert E. McCracken is respondent in the mandamus suit and the appellant in this court, for the sake of clarity, and, in order to avoid confusion, we will hereinafter refer to the former as "relator," and to the latter as the "probate judge."

The trial judge filed a very exhaustive and instructive memorandum, giving the reasons upon which he based his conclusions.

Section 22, Article 6, of our Constitution, gives Circuit Courts exclusive original jurisdiction in all civil cases not otherwise provided for, and such concurrent jurisdiction with inferior courts as is, or may be, prescribed by law.

Section 34, Article 6, of the Constitution, provides for the establishment of Probate Courts and defines the bounds of their jurisdiction.

The doctrine announced by PHILIPS, P. J., in Richardson v. Palmer, 24 Mo. App. 480, that Section 34, *supra*, did not vest in the Probate Court exclusive, but merely concurrent jurisdiction, with other courts of record, to entertain suits against administrators for the establishment of demands against estates, has been uniformly approved and acted upon in this State. [State ex rel. Ziegenhein v. Tittmann, 103 Mo. 553, loc. cit. 566, 567; Wernse v. McPike, 100 Mo. 476, loc. cit. 486; Matson & May v. Pearson, 121 Mo. App. 120, loc. cit. 134; Stephens v. Bernays, 119 Mo. 143, loc. cit. 147; Knisely v. Leathe, 256 Mo. 341, 166 S. W. 257. See also State ex rel. v. Holtcamp, 266 Mo. 347, loc. cit. 358, 181 S. W. 1007.]

The following sections of the Revised Statutes of Missouri for the year 1929, are important and a proper construction of same is essential in reaching a correct determination of the issues involved in this appeal, viz:

Sec. 185. All actions commenced against such executor or administrator, after death of the deceased, shall be considered demands legally exhibited against such estate from the time of serving the original process on such executor or administrator. [Mo. Stat. Ann., Sec. 185, p. 115.]

Sec. 186. Any person may exhibit his demands against such estate by serving upon the executor or administrator a notice, in writing, stating the amount and nature of his claim, with a copy of the instrument of writing or account upon which the claim is founded; and such claim shall be considered legally exhibited from the time of serving such notice, or a waiver of such notice, in writing, by the executor or administrator. [Mo. Stat. Ann., Sec. 186, p. 115.]

Sec. 189. Any person having a demand against an estate may establish the same by the judgment or decree of some court of record, in the ordinary course of proceeding, and exhibit a copy of such judgment or decree, . . . to the Probate Court, . . . [Mo. Stat. Ann., Sec. 189, p. 121.]

Sec. 206. If any judgment of a court of record be filed in said court, and when demands are allowed against an estate, such court shall determine its class, and the clerk shall make an entry thereof in his abstract, and when thus classed the executor or administrator may satisfy such demand according to such classification. [Mo. Stat. Ann., Sec. 206, p. 134.]

Sec. 231. (As amended, Laws 1933, p. 164.) If it appears to the court that such notice was duly published, and that the estate of the deceased has been fully administered and all debts paid, the

court shall make final settlement, . . . [Mo. Stat. Ann., Sec. 231, p. 152.]

It is urged on behalf of the probate judge that administration on the estate of Theo. F. Koch, deceased, had begun and had progressed to some extent while his predecessor was in office, he having been elected in 1934. However, while on the witness stand, during the hearing of the mandamus suit in the Circuit Court, he admitted that prior to the filing of the so-called final settlement he had information from Frank H. Koch, the executor of the estate, of the rendition of the judgment by the Circuit Court and that he (Koch) didn't know what to do about it. Yet, with this information and knowledge that there was an outstanding claim against the estate which had been reduced to judgment in a superior court which had jurisdiction to hear and determine claims, he went through the form of approving the settlement as a final settlement and discharging the executor, completely ignoring the statutes which, in express terms, require that the estate be fully administered and all debts paid before a final settlement is allowable.

Both the executor, Frank Koch, and the probate judge, therefore, had knowledge of this outstanding judgment against the estate when the former presented and the latter approved the so-called final settlement and entered a discharge for the executor.

In Nolan v. Johns, 108 Mo. 431, loc. cit. 437, MACFARLANE, J., said: "It has been held by this court, and justly, too, that an administrator cannot defeat the jurisdiction of the Circuit Court when once acquired, by making final settlement of the estate and obtaining an order of discharge as such administrator from the Probate Court. The ends of justice could not be thus defeated." This doctrine was approvingly quoted in State ex rel. v. Holtcamp, 266 Mo. 347, loc. cit. 361, 181 S. W. 1007.

Statutes which are *in pari materia* should be read and construed together in order to keep all the provisions of the law on the same subject in harmony, so as to work out and accomplish the central idea and intent of the lawmaking branch of our State government, that before an estate is closed all matters and things in respect to it should be finished and closed up, all debts paid, as far as its assets would permit, all litigation ended, and the estate fully administered and the residue, if any, then to be distributed among those lawfully entitled thereto. Our statutes provide a complete plan and scheme for the administration and final settlement of estates. It is obvious that no final settlement can be lawfully made before the estate is fully administered.

We quote the language of the new section 231 (Laws 1933, p. 164): "If it appears to the court that such notice (meaning final settlement notice) was duly published, and that the estate of the

deceased, *has been fully administered and all debts paid*, the court shall make final settlement . . ." (Italics are ours.)

The inventory and appraisement filed in the Probate Court by the executor, Frank Koch, on December 11, 1933, show that the assets, consisting of real estate, was of the appraised value of $6500.

No settlement was filed by the executor "at the first term of the probate court after the end of six months from the date of his letters" as required by the provisions of Sec. 214, Revised Statutes Missouri 1929, but the only settlement filed by him was the so-called final settlement on the 13th day of February, 1935, in which he sets out that he received no assets from the estate, but that he had paid out of his own personal funds $1500 in satisfaction of an allowed demand on a promissory note due to Herman L. Schwarze and $5 to certain beneficiaries under the last will of William Koch and $67.85 for probate fees and costs of advertising, making, all told, a total amount of $1562.85, all paid out of his personal funds, leaving nothing due the estate.

We hold that the so-called final settlement made under the conditions hereinbefore set out, was null and void as such; the most that could be said in its favor is that it might be treated as an annual settlement. An annual settlement is not a judgment and the Probate Court on final settlement may correct all errors of omission or commission found in the annual settlements.

The estate was not fully administered. The legitimate debts which the estate owed had not been paid. The Probate Court had no jurisdiction to make a final settlement.

In State ex rel. v. Holtcamp, 266 Mo. 347, l. c. 369, 181 S. W. 1007, our Supreme Court in banc quotes approvingly from Smiley v. Cockrell, 92 Mo. 105, loc. cit. 111, the following:

"Under the provisions of section 239, R. S. 1879, the probate court is not authorized to make final settlement, unless the estate is 'fully administered,' but an estate cannot be said to be fully administered, while the demands of creditors remain unadjusted and unsatisfied, and that which should have gone in satisfaction of their demands is diverted from its legitimate purpose to the satisfaction of claims which should always be subordinated to the demands of executors." [See also State ex rel. Aufderheide v. Stolte (Mo. App.), 1 S. W. (2d) 209; Ryans v. Boogher, 169 Mo. 673, 69 S. W. 1048; Laws of Missouri 1933, p. 164.]

The probate judge in the instant case evidently overlooked the law that the Circuit Court, a superior court, had concurrent jurisdiction with the Probate Court to hear and determine claims against the estate of deceased persons. It had already passed on the merits of the claim which had been sued on by relator in the Circuit Court, so the Probate Court had no right, when the certi-

fied copy of the judgment of the Circuit Court had been filed in the Probate Court, to undertake to pass on the merits of the claim, or, to exercise any judicial discretion in respect to the merits as that had been done by a court possessing concurrent and equal authority to pass on and decide the validity of the claim. All that remained for the Probate Court to do was the act of classifying the judgment of the Circuit Court as a valid claim against the estate of the decedent. This the Probate Court should have done.

The policy pursued by the probate judge would, in many instances, lead to absurd and fantastic results. We could visualize a situation where the executor would be presenting his final settlement to the Probate Court in the forenoon of the same day on which a creditor of the estate was seeking to obtain a judgment against the estate in the Circuit Court on a promissory note, and, where, as in the instant case, the demand had been legally exhibited against the estate in accord with the provisions of Section 185, Revised Statutes Missouri 1929, by the service of process on the executor before the expiration of one year after the issuance of letters testamentary.

We could visualize further, that the executor, as in the instant case, is desirous of getting the estate closed and procuring his discharge and putting the Circuit Court claim, just though it may be, in the discard, and the probate judge also, knowing of the pendency of the claim in the Circuit Court, yields to the importunities of the executor and approves the alleged final settlement and grants the executor a discharge in the forenoon and the executor goes home. And then, in the afternoon of the same day, the creditor's case is called for hearing in the Circuit Court and that court renders a judgment on the note sued on against the estate and the creditor, by a superhuman effort, induces the circuit clerk to abandon his multitudious and miscellaneous duties and spread the full judgment in his record book and furnish a certified copy of same, and the creditor snatches it in mad haste and runs to the Probate Court and gets in just before closing time and presents it to the probate judge, who then advises him that he is sorry, but that the executor had made his final settlement and had been discharged and had left for home, all in the forenoon, and that he, the probate judge, had no right of jurisdiction to do anything in reference to this belated Circuit Court judgment no matter how just it might be.

It has been said that "the race is not always to the swift, nor is the battle to the strong, but to the vigilant, the active, and the brave," but, if the above supposed case, which closely parallels the facts of the case at bar, is a fair sample of the administration of justice, we feel impelled to paraphrase the above saying by suggesting that justice, personified as the blind goddess Justitia, with

her sword and scales, oft travels with leaden feet and that the race as well as the battle is not won by vigilance, activity and bravery, but by cunning, shrewdness and craft.

The probate judge should have known that he had the power to set aside any judgment, valid or invalid, at any time during the term at which it was rendered. Any court of record possesses that power.

The judgment in favor of relator and against the estate was rendered by the Circuit Court on the 8th day of February, 1935; a certified copy of this judgment was filed in the Probate Court on the 13th day of March, 1935. It is well known that, on account of the many miscellaneous duties devolving upon the circuit clerk, it is practically impossible, particularly in country circuits, for him to spread on the record proper the many judgments rendered by the court and orders made as shown by the minutes made on the judge's docket, and, as the judgments must be entered in full on the record with meticulous and painstaking care, it is the usual and approved custom of circuit clerks not to attempt to spread the judgment entries in full in the record until after the final adjournment of the term. So, there is always some delay in procuring a certified copy of a judgment.

There is no showing that anyone was harmed or suffered any inconvenience in the little over a month's delay from the date of the rendition of this relator's judgment in the Circuit Court until a certified copy of it was filed in the Probate Court. At the time of the filing of the said certified copy in the Probate Court the February term of that court had not been finally adjourned and the probate judge still had the power to cancel and set aside any judgment, valid or invalid, which had been rendered during the term. He not only failed to set aside his invalid and void judgment in approving the so-called final settlement presented by the executor, but failed and refused to classify the relator's judgment, as the law plainly requires him to do, and based his refusal to act, as required by Section 206, Revised Statutes Missouri 1929, solely on his claim of lack of jurisdiction, because theretofore, on February 13, 1935, the exeutor had made a final settlement and it was approved and the executor discharged.

It has been said, in a facetious and paradoxical way, in speaking of Napoleon's wonderful powers as a military captain, that he always undertook to do more than he *could* do, and then did it. So, the probate judge in thus summarily closing the administration of the estate bears a striking similitude to Napoleon, in that he did more than he *could* do.

The estate had not been "fully administered," nor were "all debts paid," two of the three necessary requirements which must exist

before final settlement can be made. [See new Section 231, Laws of Missouri, 1933, p. 164.]

In State ex rel. Aufderheide v. Stolte (Mo. App.), 1 S. W. (2d) 209, loc. cit. 213, the court there says:

"Full administration of an estate contemplates collection of all claims due the estate as well as *the payment of debts owing by the estate.*" (Italics ours.)

So the order made by the Probate Court in approving the final settlement was clearly void and did not constitute any legal barrier to the classification of relator's judgment.

It is, of course, the primary duty of an executor or administrator to defend against all claims brought against the estate. [Sec. 94, R. S. Mo. 1929 (Mo. Stat. Ann., Sec. 94, p. 57.] But after a claim has been heard and its merits judicially determined and judgment rendered against the estate, as was done by the Circuit Court in respect to relator's claim in the instant case, based on a promissory note unappealed from, it then is taken out of the realm of litigious dispute and becomes a liquidated demand as to the amount found due and owing by the estate to relator. The executor is no longer required to defend, because the judgment has become a finality. He must treat it as any other valid claim. His oath of office when letters are granted (see Sec. 17, R. S. Mo. 1929), contains a promise that he will "pay the *debts* and legacies as far as the assets will extend and the law direct." The assets are there in the estate, more than sufficient to pay the judgment, it therefore becomes his duty, subject to the action of the Probate Court in the formal matter of classifying the claim, to pay it off in full.

And, it is the duty of the Probate Court to see that this executor, as well as all other appointees in charge of estates, do their duty. The Probate Court has superintending control over the acts and doings of all persons handling estates in the court.

We do not wish to be understood as censuring the probate judge. No doubt the untenable position he has assumed in this instance was due in part to his lack of experience and his unfamiliarity with the condition of the estate as he was elected in 1934 and the administration on the estate had been in progress under the auspices of his predecessor in office for nearly a year before he qualified as probate judge.

We think mandamus is a proper remedy to apply. Counsel for the probate judge challenge the right of relator to invoke the extraordinary writ of mandamus in the instant case because they claim he may obtain relief by the application of other remedies such as by appeal. As we view it, and as the learned trial judge viewed it, the remedies must be adequate in order to preclude a party from invoking the writ of mandamus.

We think the Supreme Court in State ex rel. v. Holtcamp, 266 Mo. 347, loc. cit. 372, *et seq.*, has decided this point adversely to the contention of counsel for the probate judge in the instant case. The Supreme Court in the Holtcamp case, *supra*, quoted approvingly from State ex rel. v. Homer, 249 Mo. 58, as follows:

"Nor will mandamus usually issue where there are other adequate remedies, but in the light of this rule the other remedies or remedy must be fully adequate. The mere fact that there might be another remedy is not sufficient to preclude the use of the writ of mandamus. The other remedy must be adequate, and whether it is adequate is one appealing to the judgment and discretion of this court when the circumstances of each case are laid before us. . . . It may be that an appeal or some such remedy was at hand, but was that remedy adequate? Under the facts we could have well said that it was not.

"But aside from this there is much respectable authority to the effect that mandamus is the only proper remedy where a circuit court refuses to proceed with a case, because the court was of the opinion that it did not have jurisdiction of the cause, or of the parties to the cause. In the circuit court case the trial court refused to entertain jurisdiction and proceed with the case upon a preliminary objection to the return of service to the process."

Then the court, in the Holtcamp case, *supra*, after an exhaustive and learned review of many cases bearing on that subject, held that mandamus was a proper remedy in the case it was passing on, which involved a point strikingly similar to that in the case at bar. So that, we feel satisfied that under the authority of the principles announced in the Holtcamp case, *supra*, mandamus is the proper remedy. [See also State ex rel. v. Holtcamp, 273 Mo. 124, 200 S. W. 294; State ex rel. v. Wilson, 221 Mo. App. 9, 297 S. W. 419, loc. cit. 421.]

Our conclusion is that the judgment of the trial court is correct, and should be affirmed, and it is so ordered. *Becker* and *McCullen, JJ.,* concur.